STATE of Minnesota, Respondent,

v.

Michael Dale STOKES, Appellant.

No. C1–83–2029.

Court of Appeals of Minnesota.

Aug. 28, 1984.

Hubert H. Humphrey, III, Atty. Gen., Alan Mitchell, St. Louis County Atty., Brian Simonson, Asst. St. Louis County Atty., Hibbing, for respondent.

Manuel H. Stein, Stein & Stein, Hibbing, for appellant.

Heard, considered and decided by LANSING, P.J., and WOZNIAK and FORSBERG, JJ.

## OPINION

LANSING, Judge.

Michael Dale Stokes appeals a jury verdict finding him guilty of driving while under the influence of alcohol in violation of Minn.Stat. § 169.121 (Supp.1983). Stokes contends that (1) the evidence is insufficient to support his conviction; (2) he was denied a fair trial because the prosecutor asked objectionable questions and made prejudicial statements; and (3) the trial court erred in admitting evidence without a proper foundation. We affirm the conviction.

## FACTS

Michael Stokes cut and hauled wood for three days prior to this incident, making several trips from Hibbing, Minnesota, to the Twin Cities. When finished, he went to visit a friend, Steven Finch, who accompanied him to the Airway Inn in Hibbing.

The testimony about the events at the Airway conflicts. Stokes testified that he had one beer, fell asleep, awoke and had one swallow of another beer, and then left. Finch testified that Stokes had one beer at the Airway and then they talked for two hours.

Stokes' sister, a part-time bartender at the Airway, said that she sold him one beer and that he left the Airway at 12:30 a.m. after telling her he was very tired. The Airway night manager said that Stokes seemed tired but sober and testified that he fell asleep for several hours at his table. She gave him a beer at 11:30 p.m.; he took one sip and left.

At approximately 1:00 a.m., Stokes, driving home, crossed the center line and the other lane, hit a group of mailboxes, and went into a ditch before stopping. Stokes said that he awoke as the car was going end over end. The car was "totaled."

William Lewis, at home, heard Stokes' car hit the mailboxes and heard debris flying. His wife, Deborah Lewis, called an ambulance. He found Stokes crawling toward the road and took him home. He asked Stokes if there was anyone else with him. Stokes said "yes" and "babbled" a bunch of names, leading Lewis to believe that three or four people were in the car. Lewis testified that he smelled alcohol and that Stokes was drunk "plus shooken up." Deborah Lewis testified that, in her opinion, Stokes had too much to drink and was unstable due to the accident.

When Mark Chartier, a Hibbing police officer, arrived, the ambulance crew told him it was likely other people had been involved in the accident. Chartier and the crew searched the area. Finding no one, Chartier went to the Lewis residence and spoke to Stokes. Stokes first told Chartier that two people had been with him and then said there were three. Chartier smelled a heavy alcohol odor and observed that Stokes' speech was very poor, that his statements did not make sense, and that he was "rather stupefied."

St. Louis County Sheriff's Deputy George McComesky arrived and searched the area again with Chartier. McComesky asked Stokes if there had been anyone else with him. Stokes denied that he had been driving. Stokes' sister then arrived and told McComesky that Finch and his girlfriend had not left the bar with Stokes.

Deputy McComesky read Stokes his *Miranda* rights, after which Stokes told McComesky that he was sleeping in his car in front of the Airway and the next thing he knew the car was rolling end over end. He said he left the keys in the ashtray and that someone got into the car, drove it, and then ran away after the accident.

McComesky testified that Stokes was under the influence of alcohol and had been drinking heavily that night. He stated that Stokes smelled strongly of alcohol, had slurred speech, bloodshot eyes, was unsteady, moved very slowly, and was "shook up."

At the police station Stokes refused a breathalyzer or blood test. Stokes' mother testified that she saw Stokes after the accident and thought he did not know what he was saying. She noticed a slight smell of alcohol but believed Stokes was not drunk. Stokes' brother-in-law also saw Stokes after the accident. He said Stokes was "all shook up and half-conscious."

## ISSUES

1. Is the evidence sufficient to support Stokes' conviction?

2. Was Stokes denied a fair trial by the prosecutor's objectionable questions and prejudicial statements?

3. Did the trial court err in admitting evidence without a proper foundation?

## ANALYSIS

### I

Stokes argues that the evidence is insufficient because the jury could only have reached a guilty verdict by ignoring all of the evidence indicating that he had only one beer and a sip of another before the accident. He also contends that his conviction was based solely on circumstantial evidence and that the circumstantial evidence does not establish guilt beyond a reasonable doubt but, rather, corroborates his testimony that he fell asleep while driving and was disoriented due to the accident.

█ In reviewing a claim of insufficiency of evidence, this court must interpret the evidence in the light most favorable to the verdict and assume that the jury disbelieved any testimony conflicting with the result reached. *State v. Vu,* 339 N.W.2d 892, 898 (Minn.1983). If the jury, giving due regard to the presumption of innocence and the State's burden of proving guilt

beyond a reasonable doubt, could reasonably have found the defendant guilty, the verdict will not be upset. *State v. Parker,* 353 N.W.2d 122, at 127 No. C9–83–1114, slip op. at 10 (Minn.1984). Defendant maintains that the standard for convictions based on circumstantial evidence also applies. A conviction based on circumstantial evidence can be sustained only when "the reasonable inferences from such evidence are consistent only with defendant's guilt and inconsistent with any rational hypothesis except that of his guilt." *Hanson v. State,* 345 N.W.2d 794, 796 (Minn.Ct.App. 1984) (quoting *State v. Threinen,* 328 N.W.2d 154, 156 (Minn.1983)).

There is substantial evidence sustaining Stokes' conviction. Stokes admitted that he was driving and that he drank some beer while he was very tired. William Lewis smelled alcohol. Chartier smelled alcohol, observed that Stokes' speech was very poor and that he was "rather stupefied." McComesky smelled alcohol and observed that Stokes' speech was slurred, his eyes were bloodshot, he was unsteady, and moved very slowly. Both of the Lewises and both of the police officers thought that Stokes was under the influence of alcohol.

█ Stokes' assertion that his conviction was based solely on circumstantial evidence characterizes all of the testimony of both police officers and of William Lewis as circumstantial evidence. This characterization is in error. The observations of William Lewis, Chartier and McComesky that Stokes was "unsteady," smelled of alcohol, etc., are direct evidence of the conditions they observed. Stokes also overlooks his own admission that he was driving and had consumed alcohol. These admissions are direct, not circumstantial, evidence.

█ We find that there was sufficient evidence, both direct and circumstantial, for the jury to convict Stokes of driving while under the influence of alcohol.

### II

█ Stokes contends that the County Attorney's cross-examination was argumenta-

tive and prejudicial. The cross-examination was vigorous and sometimes objectionable. The trial court, however, sustained objections to four of the five questions now cited by Stokes as grounds for reversal. The trial court asked the prosecutor to rephrase the fifth question, which the prosecutor did. Stokes did not seek a mistrial or curative instruction. We have examined the record and are satisfied that Stokes was not prejudiced by the prosecutor's conduct during cross-examination.

Stokes maintains that the prosecutor's closing argument was improper because he suggested that defendant's witnesses were not telling the truth and because he read a portion of the court's instructions on the law to the jury.

 Although closing arguments that inject a personal opinion on the veracity of witnesses are improper, the comments in this case do not reach the threshold of impropriety. *See Parker*, slip op. at 11. In addition, Stokes made no objection to the remarks he now calls improper. In general, "if defense counsel fails to object to allegedly improper conduct by the prosecutor, the defendant is deemed to have forfeited his right to have the issue considered on appeal." *State v. Russell*, 330 N.W.2d 459, 461 (Minn.1983) (citing *State v. Kline*, 306 N.W.2d 132 (Minn.1981)). The failure to object implies that the defense found nothing improper in the argument. *See State v. Daniels*, 332 N.W.2d 172, 180 (Minn.1983). Stokes has not presented any compelling reason why we should not follow the general rule.

 As part of his closing argument, the prosecutor read the court's instruction which defined "under the influence of alcohol." Stokes' counsel objected and was overruled. The trial court properly overruled the objection. The instructions may be stated to the jury by either party as part of the closing argument. Minn.R.Crim.P. 26.03, subd. 18(2).

### III

 Finally, Stokes contends that the trial court committed reversible error by failing to require a proper foundation before admitting the opinion evidence of three prosecution witnesses, Chartier, McComesky, and Deborah Lewis.

The prosecutor did not ask specifically for Chartier's *opinion* as to whether Stokes was under the influence of alcohol until after establishing that Chartier had smelled alcohol and had in the past observed hundreds of people under the influence of alcohol.

Before asking for McComesky's opinion, the prosecutor established that McComesky had conversed with Stokes and had previously observed persons under the influence of alcohol. Stokes' attorney objected but was overruled. In addition, after stating his opinion, McComesky gave his reasons for the conclusion (slurred speech, bloodshot eyes, etc.). The prosecutor followed essentially the same pattern in questioning Deborah Lewis.

 We find no error. A trial court has broad discretion with regard to the foundation necessary for this lay opinion testimony.

The trial court has broad discretion in determining the adequacy of foundation for a lay person's opinion whether another person at a certain time was intoxicated or under the influence. Normally a witness will testify that he observed one or more objective indicators of intoxication or of being under the influence, and the trial court's function is to determine whether under the circumstances of the case these observations constitute a sufficient foundation for an opinion. There is no mechanical rule which the court must follow in exercising that discretion.

*State v. Schneider*, 311 Minn. 566, 249 N.W.2d 720, 721 (1977).

### DECISION

The evidence in this case was sufficient to support Stokes' conviction, Stokes was not denied a fair trial, and the trial court did not abuse its discretion when determin-

ing the adequacy of the foundation for a lay person's opinion.

Affirmed.