STATE of Minnesota, Respondent,

v.

Leona Faye SHEPARD, Appellant.

No. C8–90–2287.

Court of Appeals of Minnesota.

July 2, 1991.

Review Granted Aug. 29, 1991.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Earl E. Maus, Cass County Atty., Jon P. Eclov, Asst. County Atty., Walker, for respondent.

Jay E. Sommer, Pine River, for appellant.

Considered and decided by FOLEY, P.J., and HUSPENI and AMUNDSON, JJ.

## OPINION

HUSPENI, Judge.

Appellant contends the evidence is insufficient to support a verdict of driving while under the influence of alcohol. The jury acquitted her of driving with an alcohol concentration of .10 or more, but found her guilty of careless driving and driving under the influence of alcohol. We find the evidence insufficient to support her conviction of driving while under the influence and reverse.

## FACTS

On November 19, 1989, appellant Leona Faye Shepard and her husband drove their truck to a laundromat in Pine River. Shepard's father-in-law, who was at the Shepard home all day, testified the couple left home between 2:30 and 3:00 in the afternoon. On the way home from the laundromat, the couple stopped at the American Legion Club for a late lunch. There, they watched a football game and Shepard had a steak sandwich, french fries and two mixed drinks. Shepard and her husband left the American Legion to return home. Shepard testified that about four miles from home, she fell asleep, and when she felt the right tire of the truck go onto the shoulder of the road, she turned sharply to get back on the road. The truck veered across the road into the opposite ditch and rolled on its top.

The exact time of the accident is unknown. Shepard and her husband climbed out of the overturned truck and were picked up by a passerby about 15 minutes later and taken home. Shepard's father-in-law testified that Shepard did not appear or sound drunk when she came home.

Shepard testified that once home she put her husband to bed because he had been complaining of chest pain. Shepard's father-in-law poured a coffee and whiskey for Shepard to "warm her up." Shepard testified that after she had been home for about an hour-and-a-half, she called the Cass County sheriff's office to report the accident. The sheriff's office told her the deputy would have to call her back. At 7:00 p.m. the deputy returned her call. He told her it would be a while before he could come out to see her. The deputy knew Shepard and later testified that her speech sounded slurred on the phone. Shepard testified she was so shook up she had a number of drinks while she sat and talked with her father-in-law.

After some time, Shepard's father-in-law drove Shepard to the scene of the accident to gather the laundry which had fallen out of the truck. Between 8:30–8:40 p.m., the deputy arrived at the scene and observed the overturned pickup, the road condition and skid marks on the road. When he talked with Shepard and her father-in-law, he noticed Shepard's speech was slurred. He drove them to the Shepard residence, where he talked with Shepard about the accident. After ascertaining what had happened, the deputy asked her to take a urine test. The test was taken at 9:09 p.m.

The urine test showed Shepard's blood alcohol content was .13. The deputy issued her a citation for driving with a blood alcohol concentration of .10 or more. Later, on April 25, 1990, a complaint was filed adding the charges of careless driving and driving under the influence of alcohol. On September 27, a jury found Shepard guilty of careless driving and driving under the influence of alcohol. The jury acquitted Shepard of driving with an alcohol concentration of .10 or more.

## ISSUE

Was the evidence sufficient to support Shepard's conviction?

## ANALYSIS

Shepard argues that the State failed to show the causal connection between her drinking and the accident and did not prove beyond a reasonable doubt that she was guilty of driving under the influence. Therefore, Shepard maintains the evidence was insufficient and the jury's verdict should be overturned. We agree. We find no evidence to connect the officer's observations of Shepard to the time of driving. Therefore, the evidence is insufficient to support the verdict.

■ To determine the sufficiency of the evidence, we consider the evidence in the light most favorable to the verdict to decide whether a jury could reasonably have found Shepard guilty of the crime charged. *State v. Ulvinen*, 313 N.W.2d 425, 428 (Minn.1981). The court must determine if the jury

> acting with due regard to the presumption of innocence and for the necessity of overcoming it by proof beyond a reasonable doubt, could reasonably conclude from the evidence contained in the record that the defendant was guilty of the offense charged.

*State v. Dodis*, 314 N.W.2d 233, 237 (Minn. 1982). Shepard was convicted of violating Minn.Stat. § 169.121, subd. 1(a) (1988). This statute provides:

> It is a misdemeanor for any person to drive, operate, or be in physical control of any motor vehicle * * * when the person is under the influence of alcohol.

"Under the influence" means Shepard did not "possess that clearness of intellect and control of [herself] that [s]he otherwise would have." *State v. Graham*, 176 Minn. 164, 169, 222 N.W. 909, 911 (1929).

■ The application of Minn.Stat. § 169.121, subd. 1 must "have the elements of fairness and logic." *State v. Starfield*, 472 N.W.2d 143, 145 (Minn.App.1991). Shepard is innocent unless the state proves beyond a reasonable doubt first, that Shep-

ard drove the vehicle, and second, that she was under the influence of alcohol at the time and place in question. *See State v. Stark*, 363 N.W.2d 53 (Minn.1985) (approving elements and burden of proof in jury instructions). Proof beyond a reasonable doubt is proof which an ordinary prudent person would act upon in most important affairs. *State v. Sap*, 408 N.W.2d 638, 641 (Minn.App.1987). A reasonable doubt is based upon reason and common sense, not upon whether it is beyond all possibility of doubt. *Id.*

> Not every person who has consumed a beverage containing alcohol and who controls a vehicle falls within the ban or the prohibition of the law. The person unaffected is one who consumes a beverage containing alcohol and is not thereby influenced in the operation of the vehicle. However, if the person's ability to drive or operate the automobile is lessened or impaired by * * * alcohol, then that person is under the influence of alcohol.

*Stark*, 363 N.W.2d at 55 (quoting jury instructions with approval).

■ There is no question that Shepard drove the pickup. Evidence also establishes that Shepard was under the influence of alcohol when the deputy gave her the blood alcohol test at 9:09 p.m., more than two hours after Shepard's initial call. The evidence, however, does not establish the connection between the two.

> The fact that [appellant] was involved in an accident and was later found to be under the influence establishes a sequence of events but provides no time for the sequence.

*Dietrich v. Commissioner of Public Safety*, 363 N.W.2d 801, 803 (Minn.App.1985). Testimony here shows the officer did not even see Shepard before 8:40 p.m. and did not know when the accident occurred. While the sequence of events suggests proximity in time, "this inference is not sufficient to establish the necessary temporal connection." *Id.*

■ To establish the causal connection, the officer need not actually observe the drinking and driving. *State v. Harris*, 295 Minn. 38, 42, 202 N.W.2d 878, 880–81

(1972). However, the facts still have to show a sufficient time frame to establish a connection between drinking and driving. *Dietrich*, 363 N.W.2d at 803. Here, we conclude that the State failed to present evidence sufficient to connect Shepard's driving with her state of being under the influence of alcohol.

Testimony indicates the accident happened sometime after 3:00 p.m., when the Shepards left their home, and before 7:00 p.m., when Shepard talked with the deputy. Shepard testified she had two drinks with a steak sandwich and fries for lunch at the American Legion Club sometime before the accident. The period of time between drinking and the accident is unknown. No expert testimony in the record indicates the influence or lack of influence of alcohol on a person's system after or while eating. Nor does the record contain expert testimony regarding the length of time alcohol affects the body before the alcohol is metabolized.

Appellant maintains she fell asleep at the wheel. She testified that while she was familiar with the road, she was driving a new truck and was not familiar with how to maneuver the truck in this type of situation. The deputy testified the road was straight and dry. He noted it was a clear day. Appellant's father-in-law testified that she did not appear to have been drinking when she came home.

The deputy testified he did not talk with appellant on the phone until 7:00 p.m. Shepard testified she was "so shook up" she had a few drinks before she talked with the deputy about the accident. No one witnessed Shepard's driving or condition at the time of the accident. Here, the deputy did not see Shepard until some period of time had elapsed after the accident; a period of time during which, according to Shepard's uncontradicted testimony, she had a number of drinks.

The jury found Shepard not guilty of driving with a blood alcohol level of .10 or greater. While this finding of not guilty indicates a recognition by the jury that the test was taken more than two hours after any driving by Shepard, we believe that verdict also supports the necessity under the facts of this case, for the State to connect by expert testimony or otherwise, the unobserved driving conduct to the observed (or tested) state of being under the influence of alcohol. The state failed to present any evidence to the jury to connect Shepard's driving conduct with the officer's later observations of Shepard under the influence.

It is instructive to contrast two cases. In one, we found the evidence insufficient for conviction, in the other, we found sufficient evidence for conviction.

In *State v. Stokes*, 354 N.W.2d 53, 55 (Minn.App.1984), the defendant drove his car across the center line, hit a group of mailboxes and went into a ditch. No one observed the accident. A nearby homeowner heard the accident and found Stokes near the "totaled" car. *Id.* Testimony of the homeowner and a sheriff's deputy arriving shortly thereafter established that Stokes babbled, smelled of alcohol, was unsteady, had bloodshot eyes and appeared drunk. *Id.* at 56. Stokes also admitted he was driving, was tired and had had some beer. *Id.* His story of what happened changed a number of times.

In both *Stokes* and the instant case, no one witnessed the vehicle going off the road. However, in *Stokes*, a homeowner heard the accident and talked with Stokes immediately thereafter. In addition, a deputy arrived at the scene within a short time. These contacts with the driver in *Stokes* made it possible to connect temporally the driving and the observed signs of intoxication. In the instant case, the time of the accident was not determined. Substantial time elapsed, during which Shepard testified she had been drinking, before the deputy talked with her on the phone. While Shepard admitted having two drinks in the afternoon, the evidence does not show what impact, if any, those drinks had upon her at the time of the accident. Unlike *Stokes*, Shepard never changed her story about what happened.

In *State v. Elmourabit*, 373 N.W.2d 290, 294 (Minn.1985), the Minnesota Supreme Court affirmed this court's decision which

found insufficient evidence to support a jury verdict of guilt. The supreme court in *Elmourabit* noted that inferences from circumstantial evidence were in "uneasy equilibrium." *Id.* at 293. The evidence showed the defendant was driving 13 miles per hour over the speed limit, his speech was slurred (however, English was not his native tongue), he smelled of alcohol, and he admitted he recently had a bottle of beer and a few sips of another beer. *Id.* While testimony indicated a lack of coordination, video-taped dexterity tests showed none. *Id.* The court found *Elmourabit* to be a "rare exception" in which a jury verdict was overturned because of insufficiency of the evidence. *Id.* at 294.

Although we recognize that issues of insufficiency of evidence must be determined on the specific facts of each case, we find the case now before this court similar to *Elmourabit*. In fact, the evidence in *Elmourabit* is more substantial than this case. In *Elmourabit*, the officer observed defendant's driving and actions immediately after stopping. Here, no such evidence exists from the time immediately following Shepard's accident. We have no testimony from the passerby who drove Shepard home. Shepard's father-in-law, the witness who first saw Shepard after the accident, stated he saw no signs that she had been drinking.

As in *Elmourabit*, there is an "uneasy equilibrium" of circumstantial and direct evidence in this case. In response to the testimony set forth in the dissent, the officer's observation must be evaluated in reference to the fact that he observed her, not at the time of the accident, but several hours later. While the credibility of the witness is left to the fact finder, here we are not looking at credibility. Instead, we focus on whether the circumstantial evidence could reasonably lead to this verdict. We have stated:

> Reversal becomes a question of whether the 'jury could reasonably conclude, under the facts and any legitimate inferences that the defendant was guilty.'

*State v. Larson*, 429 N.W.2d 674, 675 (Minn.App.1988) (quoting *State v. Langley*, 354 N.W.2d 389, 395 (Minn.1984)), *pet. for rev. denied* (Minn. Nov. 8, 1988).

Although circumstantial evidence is not required to exclude every other theory, it must outweigh any conflicting inferences in order to support a verdict. *Martelle v. Thompson*, 283 Minn. 279, 283, 167 N.W.2d 376, 379 (1969). A conclusion based on an inference, without the evidence to support that inference, is merely conjecture. *Truesdale v. Friedman*, 270 Minn. 109, 127, 132 N.W.2d 854, 866 (1965) (citations omitted). The State is required to present more than conjecture, speculation or suspicion. *Martelle*, 283 Minn. at 283, 167 N.W.2d at 379. Conjecture is insufficient to support an affirmative verdict. *Smith v. Kahler Corp.*, 297 Minn. 272, 276, 211 N.W.2d 146, 149 (1973).

We conclude that the State did not prove beyond a reasonable doubt that Shepard drove while she was under the influence of alcohol. The evidence here is: a positive alcohol concentration test taken at 9:09 p.m., more than two hours after Shepard initially talked to the deputy on the phone; a 7:00 p.m. phone conversation in which Shepard reported the accident and indicated it occurred about an hour-and-a-half earlier; a rolled vehicle; and Shepard's acknowledgment that she had two drinks with her late lunch sometime after 3:00 p.m. What happened and when the truck rolled is unclear. Shepard maintains she fell asleep. The evidence on the record provided no basis for the jury to connect the officer's delayed observations of Shepard to the time she drove her vehicle. Because the jury's verdict appears to be based on conjecture, we view the evidence insufficient to support the verdict.

## DECISION

The State failed to prove the causal connection between Shepard's drinking and driving under the influence. The circumstantial evidence presented is insufficient to prove beyond a reasonable doubt that Shepard was guilty of driving under the influence.

Reversed.

FOLEY, Judge (dissenting).

I respectfully dissent. It is my view that in reversing this case the majority is, in effect, granting a de novo hearing to make a finding of reasonable doubt. It is a fundamental rule in criminal law that on appeal the case must be reviewed in the light most favorable to the verdict. In reversing, the majority gives no deference to the police officer's determination. *See State v. Olson*, 342 N.W.2d 638, 640–41 (Minn.App. 1984).

The cases are legion setting out the rule that trained law enforcement officers " 'may make inferences and deductions that might well elude an untrained person.' " *See, e.g., State v. Kvam*, 336 N.W.2d 525, 528 (Minn.1983) (quoting *United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)).

The credible evidence, obviously believed by the jury, is reflected by the testimony of Officer Todd Switajewski on direct examination. Switajewski met Shepard at the scene of the accident. The following testimony is significant to decision in this case:

Q. Did she tell you who was driving?

A. She said that she was.

Q. What else?

A. I asked her if she been drinking.

Q. What did she say?

A. She said she had been down to the supper club and had lunch and had some drinks down there.

Q. Did you notice anything about the way she moved?

A. Well, her balance wasn't real good I noticed and her speech was kind of slurred. I could smell the odor of an alcoholic beverage when I got close to her.

Q. Were you—you were familiar with her from the past?

A. Yes, I have known her for a number of years.

Q. So you have had many chances to speak to her in the past?

A. Oh, yes.

Q. Her speech was different at this time?

A. Right. It was a little slurred.

Switajewski then testified as to his conversation with Shepard at her residence:

Q. Did you ask her whether she had been drinking?

A. Yes, I did.

Q. What did she tell you when you were at the house?

A. She told me that she had some drinks down at the supper club.

$*$ $*$ $*$ $*$ $*$ $*$

Q. Did she tell you anything else about drinking?

A. No. That was the only place she said she had any drinks.

The record establishes that Switajewski is a trained police officer, one who is qualified to express an opinion as to whether a person is under the influence. The following questions and answers, believed by the jury, support the conviction:

Q. Now, Officer Switajewski, you had a chance to observe the Defendant both at the scene of the accident and also at the house?

A. Yes, I did.

Q. Based on your observations did you form an opinion as to whether the Defendant was under the influence of alcohol?

A. I felt that she was intoxicated, yes.

Q. And that was based on what?

A. Well her poor balance, her slurred speech, running off the road. There was no apparent reason. Off to one side of the road into the other into the ditch. She stated that she went to sleep. I guess to me that would kind of indicate that, yeah, that would go along with—be consistent with the other signs that I saw.

The following testimony was given by Switajewski with reference to a urine sample from Shepard:

Q. What kind of sample was it?

A. Urine sample.

Q. And did you have a kit or something available for that?

A. Yes, I did.

Q. So what happened?

A. She gave me a sample.

Q. And did you—what did you do with that sample?

A. That sample was sealed and sent to the state lab.

Q. The Bureau of Criminal Apprehension?

A. That is correct.

Q. And how was it sent?

A. By U.S. mail.

Q. Is that the way used by the sheriff's department in most investigations with the Bureau of Criminal Apprehension?

A. Yes.

Q. That is the recognized way?

A. Yes.

Q. And did the Bureau of Criminal Apprehension analyze that sample?

A. Yes, they did.

Q. And what was the result?

A. I don't remember right offhand.

Q. Did they provide a report of that analysis?

A. Right.

\*     \*     \*     \*     \*     \*

Q. Now, Deputy Switajewski, I am showing you now what has been marked as State's Exhibit No. 4, what is that?

A. This is the report that we received from the test—from the B.C.A. laboratory.

Q. And what was the result of that test?

A. The result of this test—this one for Leona Shepard was .13.

Q. .13 what?

A. Grams per 67 milliliters of urine, grams of alcohol.

[PROSECUTOR]: Your Honor, the state would offer State's Exhibit No. 4 in evidence.

THE COURT: Any objection, counsel?

[DEFENSE]: No, it looks absolutely correct.

THE COURT: State's Exhibit No. 4 is received.

By any standard, this unobjected-to evidence corroborates Switajewski's testimony and supports the jury verdict of guilty of DWI.

In returning a verdict of guilty of DWI (as well as careless driving, on which appeal was abandoned), it is to be assumed the jury believed Switajewski and not Shepard or her father-in-law. Because credibility of witnesses is a jury question, that finding should not be overturned on appeal, as though we were hearing the case de novo.

There were three witnesses at trial—Switajewski and two witnesses for the defense, Shepard and her father-in-law. It is a firmly-established rule of law that multitudes of witnesses are not required to sustain a conviction. A single witness can be sufficient to justify conviction and support a verdict. In this case, that witness is Switajewski.

The majority takes the position that careless driving resulting in an accident does not establish DWI. True, but in this case there is the positive testimony of Switajewski, reaffirmed on cross-examination, that Shepard was under the influence when, after having lunch and some drinks at a supper club in mid-afternoon, she fell asleep and went off the road. The road surface was dry. Shepard had been driving westbound, went off onto the right shoulder and then across the road into the ditch. There were no road hazards.

I have never understood the rule of appellate review to require dissecting and isolating the evidence to find a basis to substitute our judgment for the jury's verdict. The credibility of all evidence in the case, direct and cross-examination, was for jury determination, and we have the right to conclude the jury believed Switajewski and not Shepard.

Likewise, the jury, as well as the trial judge, saw and heard the witnesses and sifted out the credible evidence to support conviction. The jury found Shepard not guilty of driving with over .10 blood alcohol concentration. That verdict is not inconsistent with a finding of guilty of DWI, amply supported by Switajewski's testimony.

All contradictory and claimed inconsistencies in the record as to time and amount of alcohol are also jury questions. Shepard

had no expert testimony in this case. Shepard, as well as her father-in-law, contends that any drinking took place at home after the accident. It was for the jury to decide whether or not to believe this testimony.

It seems to me that if de novo reviews are to be granted in DWI cases, change in appellate review should come from the supreme court or the legislature and not this court. I would affirm.