STATE of Minnesota, Appellant,

v.

**Leona Faye SHEPARD, Respondent.**

No. C8–90–2287.

Supreme Court of Minnesota.

March 13, 1992.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, and Earl E. Maus, Cass County Atty., Jon P. Eclor, Asst. County Atty., Walker, for appellant.

Jay E. Sommer, Pine River, for respondent.

COYNE, Justice.

Around 6:30 p.m. on November 19, 1989, defendant "rolled" her pickup truck while driving from Pine River to her home. It was undisputed that defendant was under the influence of alcohol when she was questioned by a sheriff's deputy about the accident at 8:30 p.m. The issue for the jury was whether defendant was under the influence at the time of the accident. Defendant claimed in her testimony that she was under the influence only as a result of alcohol she drank after the accident. The court of appeals, by majority decision, concluded that the state failed to overcome this testimony and to establish that defendant was under the influence at the time she drove the truck. *State v. Shepard,* 473 N.W.2d 318 (Minn.App.1991). We agree with the dissenting judge of the court of appeals that the majority failed to follow the appropriate standard of review in determining the sufficiency of the evidence to support a guilty verdict. *Id.* at 323. Reviewing the evidence in the light most favorable to the guilty verdict, we conclude that the evidence was sufficient. Accordingly, we reverse the decision of the court of appeals and reinstate the judgment of conviction.

The accident occurred just a few miles from defendant's house on a road familiar to defendant. The road is described in the record as a straight, wide county road—a

"nice road" that was dry at the time of the accident. Defendant, who was westbound, drove onto the north shoulder of the road, then, without braking, veered across both lanes of traffic and ran into the ditch on the south side of the road. The truck came to rest upside down in some brush. Defendant and her husband, who was a passenger, climbed out of the truck and—10 or 15 minutes after the accident, according to defendant—got a lift home from a passing trucker.

At around 7:00 p.m. defendant called the sheriff's office to report the accident. The deputy who took the call and investigated the accident has known defendant for over 20 years. He testified that she told him she had "just" rolled her truck but was not sure where the accident had occurred because she had lost her glasses. He testified that her speech sounded "slurred."

Because defendant told him that the vehicle was off the road and no one was injured, the deputy completed some paperwork before driving to the scene of the accident, arriving there around 8:35 p.m. Defendant, driven by her father-in-law, had returned to the scene by then, apparently to retrieve some wet laundry from the truck before the laundry froze. Asked about the accident, defendant said she had fallen asleep at the wheel. When talking with defendant, the deputy noticed again that her speech was slurred. He also could smell the odor of alcohol on her and noticed her balance was not good. When he asked her if she had been drinking, she said she had been down to the supper club and had eaten and had some drinks. Significantly, she did not mention anything about drinking after the accident.

The deputy then drove defendant to her residence, where he talked more with her about the accident. Defendant again talked about drinking at the supper club but, by her own admission at trial, made no mention of drinking after the accident. The deputy asked defendant to take a urine test, and she consented. The test, taken at 9:09 p.m., showed that at that time her blood alcohol concentration was .13.

At trial defendant admitted she was driving the truck at the time of the accident and that she had had at least two drinks before the accident. However, for the first time, she claimed that she drank after the accident. She claimed she did not call the sheriff's office until an hour and a half after she got home and claimed she had drunk five shots of whiskey after arriving home and before returning to the scene with her father-in-law.

The jury acquitted defendant of driving with a blood alcohol concentration of .10 or more but found her guilty of driving under the influence and of careless driving. We are concerned only with the sufficiency of the evidence of driving under the influence.

In order to prove a driver guilty of driving while under the influence the state need not establish that the driver had a blood alcohol concentration of .10 or more at the time of driving. The state may obtain a conviction even if the driver's blood alcohol concentration was less than .10 provided the state shows that the driver had drunk enough alcohol so that the driver's ability or capacity to drive was impaired in some way or to some degree. *State v. Storvick*, 428 N.W.2d 55, 60 (Minn. 1988); *State, City of Eagan v. Elmourabit*, 373 N.W.2d 290, 292–93 (Minn.1985); *State v. Stark*, 363 N.W.2d 53, 56 (Minn. 1985). Reviewing the evidence in the light most favorable to the guilty verdict, we conclude that the state presented sufficient evidence to support the jury's determination that defendant was under the influence at the time of the accident. This evidence included the following:

(a) The accident was a one-vehicle rollover on a straight, "nice" road when driving conditions apparently were normal or dry. This is the type of accident "that often is explained by the [driver's] being under the influence of alcohol." *Storvick*, 428 N.W.2d at 60. *See also Eggersgluss v. Commissioner of Public Safety*, 393 N.W.2d 183, 185 (Minn.1986) (the fact that the accident was a one-car rollover was deemed relevant to whether the driver was under the influence; "turn in the road apparently was a simple turn that defendant

should have been able to negotiate" and the "fact that he did not bears on the determination of whether he was under the influence at the time").

(b) Defendant left the scene of the accident. As we stated in *Storvick*, 428 N.W.2d at 60, intoxication is a "common reason" people leave the scene of accidents.

(c) The deputy testified that when he talked with defendant at 7:00 p.m. when she called to report the accident, her speech sounded "slurred" and she said the accident had "just" occurred.

(d) Defendant told the officer at the scene and later at her house that she had been drinking at the club before the accident, but she mentioned nothing about drinking after the accident. As we stated in *Eggersgluss*, 393 N.W.2d at 185, "Presumably, if the drinking had occurred after the accident, [the driver] would have said so since that fact obviously would have helped [her]."

(e) Finally, jurors are entitled, in assessing a defendant's claim of drinking after an accident, to give weight to the obvious truth that "normally a person who is involved in a one-car rollover * * * who has been drinking beforehand, as defendant had, does not go someplace else and drink more." *Id.*

As finder of fact the jury was, of course, free to credit defendant's testimony about drinking after the accident. However, it was not obliged to credit her testimony and obviously did not do so.

■ Complaining of the absence in the record of expert testimony indicating "the influence or lack of influence of alcohol on a person's system after or while eating" and "the length of time alcohol affects the body before the alcohol is metabolized," the court of appeals appears to require the state to present expert testimony in this kind of case:

> [W]e believe that [the] verdict [of not guilty of driving with a blood alcohol concentration of .10 or more] also supports the necessity under the facts of this case, for the State to connect by expert testimony or otherwise, the unob-

served driving conduct to the observed (or tested) state of being under the influence of alcohol.

473 N.W.2d at 321.

There might be some basis for emphasizing the lack of expert testimony had the jury convicted the defendant of driving with a blood alcohol concentration of .10 or more. Even in such cases, however, the court of appeals has on several occasions (most often in unpublished decisions) rejected the argument that the state must present expert testimony that, based on backward-looking extrapolation, the driver's blood alcohol concentration at the time of the accident was .10 or more. *See, e.g., State v. Larson,* 429 N.W.2d 674 (Minn. App.1988), *pet. for rev. denied* (Minn., Nov. 8, 1988).

It is true that without more information one cannot be sure how a particular test result relates back to the time of driving. But expert testimony alone cannot provide the answer to this question. It depends on such facts as how much alcohol the defendant consumed, when the defendant last had his or her drinks, how much and what type of food the defendant ate, when the defendant ate it, the defendant's weight, and other factors. The defendant is always free to present evidence, including expert testimony, bearing on how the test result relates to the time of driving. And the defendant is always free to argue to the jury that the state did not relate the test result to the time of driving. Indeed, it is quite possible that the absence of expert testimony in this case prompted the jury to acquit defendant of the charge of driving with a blood alcohol concentration of .10 or more.

If it is possible to conjure up a case in which expert testimony relating a subsequent reading to the act of driving is required to support a conviction of driving with a blood alcohol concentration of .10 or more, this is not the case: this case is neither hypothetical nor does it involve a conviction of driving with a blood alcohol concentration of .10 or more. Rather, we

deal here with a conviction of driving under the influence under circumstances in which expert opinion testimony could have been of no possible assistance to the jury and clearly would not have constituted evidence necessary to support that conviction.

Reversed and judgment of conviction reinstated.