*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0024**

State of Minnesota,
Respondent,

vs.

Andrew Laverne DeBerry,
Appellant.

**Filed December 14, 2015
Affirmed in part and remanded
Smith, Judge**

Washington County District Court
File No. 82-CR-14-841

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Pete Orput, Washington County Attorney, Karin L. McCarthy, Assistant County Attorney, Stillwater, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jenna Yauch-Erickson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Connolly, Presiding Judge; Smith, Judge; and Minge,

Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**SMITH**, Judge

We affirm appellant Andrew Laverne DeBerry's conviction of driving while impaired (DWI) in violation of Minn. Stat. § 169A.20, subd. 1(1) (2012), because the evidence was sufficient to support the conviction. But we remand to the district court with instructions to vacate DeBerry's conviction of DWI in violation of Minn. Stat. § 169A.20, subd. 1(5) (2012), because the district court improperly convicted DeBerry under two sections of the same criminal statute.

**FACTS**

At 6:15 a.m. on February 22, 2014, Minnesota State Patrol Trooper Jack Tiegs received a call regarding vehicles off the road on I-94. Trooper Tiegs described the conditions as "wet . . . due to a recent snowfall" and "[v]ery cold." Around 6:20 a.m., he reached a blue minivan that was about 50 feet in the ditch and facing the oncoming traffic at a 45-degree angle. The minivan was buried in a snow bank so that the driver's side door could not open. Trooper Tiegs observed "a single set of footprints from the passenger side" to the back of the minivan and "a large area trampled around the back of the vehicle where it looked like somebody had spent some time walking around." The keys were located somewhere within the minivan. Trooper Tiegs identified the sole occupant of the minivan as DeBerry.

Trooper Tiegs determined that the minivan was registered to a Wisconsin resident and that DeBerry's license had been canceled. He also noticed "an odor of an alcoholic beverage, bloodshot watery eyes," and slurred speech. Trooper Tiegs asked DeBerry

about his alcohol consumption, and DeBerry stated that "he'd had some wine and beers earlier" with dinner, although he was "somewhat evasive." At some point, DeBerry stated that he was not supposed to be driving and asked Trooper Tiegs to arrest him. DeBerry declined to perform the horizontal gaze nystagmus test. "Due to the extreme cold," Trooper Tiegs chose not to ask DeBerry to perform other field sobriety tests. Trooper Tiegs arrested DeBerry for a suspected DWI.

At the jail, Trooper Tiegs read DeBerry the implied-consent advisory at 8:13 a.m. After consulting with an attorney, DeBerry consented to a breath test. The test revealed an alcohol concentration of 0.13 at 8:33 a.m.

The state charged DeBerry with one count of DWI operating a motor vehicle under the influence of alcohol in violation of Minn. Stat. § 169A.20, subd. 1(1), and one count of DWI operating a motor vehicle with an alcohol concentration of 0.08 within two hours in violation of Minn. Stat. § 169A.20, subd. 1(5). A jury found DeBerry guilty of both counts. The district court entered convictions on both counts, but only imposed a sentence on the first count.

**D E C I S I O N**

**I.**

DeBerry challenges the sufficiency of the evidence for his conviction under Minn. Stat. § 169A.20, subd. 1(1). When assessing the sufficiency of the evidence, we analyze the record "to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the jurors to reach their verdict." *State v. Caine*, 746 N.W.2d 339, 356 (Minn. 2008) (quotation omitted). We must assume that "the jury

3

believed the [s]tate's witnesses and disbelieved any evidence to the contrary." *State v. Ortega*, 813 N.W.2d 86, 100 (Minn. 2012). We will not reverse a guilty verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offense. *State v. Vang*, 847 N.W.2d 248, 258 (Minn. 2014).

To convict DeBerry under subdivision 1(1), the state was required to prove that DeBerry drove, operated, or was in physical control of a motor vehicle while under the influence of alcohol. *See* Minn. Stat. § 169A.20, subd. 1(1); 10A *Minnesota Practice*, CRIMJIG 29.02 (2006). DeBerry concedes that the evidence was sufficient to show that he drove, operated, or was in physical control of the minivan. Therefore, he only challenges the sufficiency of the evidence showing his act occurred while under the influence.

DeBerry argues that we should apply the heightened standard for circumstantial evidence to our analysis of this element. *See State v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010) (stating that "[a] conviction based on circumstantial evidence . . . warrants heightened scrutiny"). We disagree. Both direct and circumstantial evidence were presented on this element, and our caselaw does not require the use of the circumstantial-evidence standard in this situation. *See State v. Silvernail*, 831 N.W.2d 594, 604-05 (Minn. 2013) (Stras, J., concurring) (explaining that when both direct and circumstantial evidence are presented on an element of a criminal offense, our caselaw does not require the use of either standard of review).

4

"Under the influence" means that "the driver had drunk enough alcohol so that the driver's ability or capacity to drive was impaired in some way or to some degree." *State v. Shepard*, 481 N.W.2d 560, 562 (Minn. 1992). DeBerry argues that the evidence was insufficient to show that he was under the influence because he could have driven, operated, or physically controlled the minivan "in close proximity" to his alcohol consumption yet not be impaired. In doing so, DeBerry compares his case to *State v. Elmourabit* and argues that the supreme court reversed the driver's DWI conviction for insufficient evidence because the recency of his drinking created competing inferences about the driver's impairment. *See* 373 N.W.2d 290, 293 (Minn. 1985). But the timing of the driver's drinking in *Elmourabit* was only one of several issues that the supreme court identified with his conviction:

> Defendant was driving 13 miles over the speed limit, but this is not uncommon for sober drivers too. There was an odor of alcohol, but the recent drinking of one bottle of beer may leave an odor of alcohol on the breath. Defendant's speech was at times slurred, but English is not his native tongue. There was testimony of some lack of coordination, but the video-taped dexterity tests showed none. There was evidence of glassy, bloodshot eyes, but also evidence of a heightened hyperventilative state. There was evidence defendant was not having a heart attack, but neither could the officers nor the paramedics say authoritatively that defendant had no medical problems or was not experiencing pain.

*Id.* Here, there is no evidence that DeBerry's speech may have been slurred because he was not a native English speaker and no evidence of any health condition that would have caused his bloodshot and watery eyes. In addition, the only testimony regarding the timing of DeBerry's drinking was his statement to Trooper Tiegs that "he'd had some

5

wine and beers earlier" with dinner. In the absence of any evidence supporting DeBerry's argument that his drinking occurred "in close proximity" to his driving, operating, or physically controlling the minivan and any evidence of other factors that would erroneously suggest impairment, *Elmourabit* is distinguishable. *See id.* DeBerry's case is not the "rare exception" in which a jury's verdict should be set aside. *See id.* at 294.

DeBerry also suggests that the road conditions cannot support a conclusion that he was under the influence. Whether other drivers went off the road is irrelevant because DeBerry was charged with driving, operating, or physically controlling a vehicle while under the influence of alcohol and the driving conditions cannot affect DeBerry's physical control of the minivan in the snowbank while under the influence.

Viewed in the light most favorable to the verdict, the evidence was sufficient to permit the jury to reach its guilty verdict. *See Caine*, 746 N.W.2d at 356. In response to a report of a vehicle off the road, Trooper Tiegs approached a minivan that was about 50 feet in the ditch, buried in a snow bank, and facing the oncoming traffic at a 45-degree angle. DeBerry was the sole occupant of the minivan, and the keys were inside. Trooper Tiegs observed "an odor of an alcoholic beverage, bloodshot watery eyes," and slurred speech. DeBerry stated that "he'd had some wine and beers earlier" with dinner. DeBerry declined to perform the horizontal gaze nystagmus test and Trooper Tiegs decided not to perform additional tests in the "extreme cold." At the jail, DeBerry consented to a breath test that revealed an alcohol concentration of 0.13 at 8:33 a.m., a little over two hours after Trooper Tiegs approached the minivan. Although the state did

not prove that DeBerry had abnormal motor skills, difficulty walking, or a belligerent interaction with Trooper Tiegs, it was not required to do so. *See State v. Decker*, 371 N.W.2d 256, 257 (Minn. App. 1985) ("The [s]tate need not establish the impairment of gross motor and dexterity skills to prove a person is under the influence."). The jury could reasonably conclude that DeBerry drove, operated, or physically controlled the minivan while under the influence of alcohol.

Because the jury could reasonably conclude that DeBerry was guilty of the charged offense, *see Vang*, 847 N.W.2d at 258, the evidence was sufficient to support his conviction under Minn. Stat. § 169A.20, subd. 1(1).

## II.

DeBerry also argues that the district court improperly entered convictions on both charges because they arose from a single act. The state agrees. "[S]ection 609.04 bars multiple convictions under different sections of a criminal statute for acts committed during a single behavioral incident." *State v. Jackson*, 363 N.W.2d 758, 760 (Minn. 1985). Because DeBerry was convicted under two sections of a criminal statute for one behavioral incident, one of DeBerry's convictions must be vacated. *See State v. Clark*, 486 N.W.2d 166, 170-71 (Minn. App. 1992) (holding that "[o]ne of the convictions must be vacated" where the appellant was convicted of both driving under the influence and driving with an alcohol concentration above the legal limit under two sections of the same statute). We therefore remand to the district court with instructions to vacate DeBerry's conviction under Minn. Stat. § 169A.20, subd. 1(5).

**Affirmed in part and remanded.**