*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0489**

State of Minnesota,
Respondent,

vs.

Asa James Kingsbury,
Appellant.

**Filed December 28, 2015
Affirmed in part and remanded
Bjorkman, Judge**

Wright County District Court
File No. 86-CR-14-1565

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Thomas N. Kelly, Wright County Attorney, Shane E. Simonds, Assistant County Attorney, Buffalo, Minnesota (for respondent)

Daniel P. Repka, Repka Law, LLC, St. Paul, Minnesota (for appellant)

Considered and decided by Larkin, Presiding Judge; Worke, Judge; and Bjorkman, Judge.

**U N P U B L I S H E D   O P I N I O N**

**BJORKMAN**, Judge

Appellant challenges his two driving-while-impaired (DWI) convictions, arguing that (1) the evidence was insufficient and (2) he was improperly convicted of both counts

because the offenses arose from the same behavioral incident and involved different subdivisions of the same statute. Because the evidence was sufficient to support both guilty verdicts, but appellant was improperly convicted on both DWI counts, we affirm in part and remand.

## FACTS

In the early morning hours of January 5, 2014, appellant Asa James Kingsbury drove off of a highway exit ramp and into a ditch at the base of a steep embankment. At 7:36 a.m., Wright County Deputy Sheriff Todd Findell was on patrol and noticed a tow truck stopped on the exit ramp with its emergency lights flashing. After notifying the state patrol, the deputy stopped to investigate the scene. He found both the tow-truck driver and Kingsbury sitting inside of the tow truck. The deputy testified that Kingsbury's "eyes appeared glossy or glassy," and he described the weather conditions as cold and windy, with blowing snow.

State Trooper John Schmutzer soon arrived at the scene. The trooper observed that Kingsbury's eyes were puffy and his speech was thick and slurred. Kingsbury stated that he drove off the road around 5:30 a.m. and received a ride home from a passerby before returning to the scene. The trooper asked Kingsbury to accompany him back to his squad car so he could run Kingsbury's license, and Kingsbury complied. When Kingsbury exited the tow truck, he "saluted" the tow truck driver, which the trooper found unusual.

As the two walked back to the squad car, the trooper smelled alcohol on Kingsbury's breath. The trooper asked Kingsbury how much he had to drink and he

2

responded, "nowhere near enough" and then disclosed that he drank five beers between 10:00 p.m. and 1:00 a.m. The trooper administered the horizontal gaze nystagmous test and observed all of the possible signs of impairment. He also noticed that Kingsbury swayed while standing outside the squad car. The trooper declined to administer other field sobriety tests because of the weather and the fact that Kingsbury was wearing shorts. After administering a preliminary breath test, the trooper arrested Kingsbury for DWI. Kingsbury then disclosed that he had consumed one beer after the accident, which he said actually occurred around 3:30 a.m.

The trooper transported Kingsbury to the Wright County Jail and gave the implied-consent advisory. Kingsbury agreed to take a breath test at 8:41 a.m., which revealed an alcohol concentration of 0.08. Kingsbury was subsequently charged with driving while under the influence of alcohol and driving with an alcohol concentration of 0.08 or more as measured within two hours of driving. Prior to trial, Kingsbury provided notice of his intent to assert the defense of post-driving alcohol consumption.

At trial, the jury heard testimony from the two investigating officers, Kingsbury's roommate R.K., and Kingsbury. R.K. testified that Kingsbury first called her around 1:30 a.m., but she was sleeping. Another roommate eventually woke her up and told her that they needed to pick up Kingsbury. The two traveled to the accident scene and found Kingsbury walking on the exit ramp median. R.K. provided inconsistent testimony regarding the time frame, but generally indicated that they picked up Kingsbury sometime between 1:45 and 2:15 a.m. The three returned home between 2:15 and 2:30 a.m. and each drank a beer. R.K. returned to bed around 2:45 a.m.

3

Kingsbury testified that the accident occurred around 1:30 a.m. as he was en route to see his brother in Big Lake. Kingsbury admitted drinking four or five beers between 10:00 p.m. and 1:00 a.m., but said that he did not feel any effects and was not concerned about his ability to drive. After the accident, he first called R.K., and after failing to reach her, called his other roommate. His two roommates picked him up around 2:11 a.m. Consistent with R.K.'s testimony, Kingsbury stated that upon returning home, they each drank a beer. But Kingsbury further testified that he continued to drink straight whiskey until 6:00 a.m. Kingsbury met the tow-truck driver at a gas station around 6:45 a.m., and proceeded to the accident scene. Kingsbury testified that the deputy and the trooper arrived soon after, but he denied telling the trooper that the accident occurred at 5:30 a.m. Kingsbury also acknowledged that he did not tell the trooper about his post-accident alcohol consumption.

The district court instructed the jury on Kingsbury's post-driving-consumption defense. The jury found Kingsbury guilty of both DWI charges. The district court formally adjudicated Kingsbury's conviction of both counts, but only sentenced him on the driving-while-under-the-influence offense. Kingsbury appeals.

**D E C I S I O N**

**I.    Sufficient evidence supports the guilty verdicts.**

In reviewing a sufficiency-of-the-evidence challenge, our analysis is limited to ascertaining whether, based on the facts in the record and the legitimate inferences that can be drawn from those facts, a jury could reasonably conclude that the defendant was guilty of the charged offense. *State v. Merrill*, 274 N.W.2d 99, 111 (Minn. 1978). We

view the evidence in the light most favorable to the verdict, and assume that the jury believed the state's witnesses and disbelieved any evidence to the contrary. *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989). The credibility of witness testimony is the exclusive province of the fact-finder. *State v. Bliss,* 457 N.W.2d 385, 390 (Minn. 1990).

Kingsbury contends that the evidence was insufficient to support a guilty verdict on either DWI charge. We address each in turn.

**Driving While Under the Influence of Alcohol**

To prove this offense, the state was required to show that Kingsbury was "so affected by intoxicating liquor as not to possess that clearness of intellect and control of himself that he otherwise would have." *State v. Elmourabit*, 373 N.W.2d 290, 293 (Minn. 1985) (quotation omitted). A specific level of intoxication is not required. *State v. Shepard,* 481 N.W.2d 560, 562 (Minn. 1992). Rather, the state need only prove that the driver's "ability or capacity to drive was impaired in some way or to some degree." *Id.*

Both parties agree that the driving-while-under-the-influence guilty verdict turns in large part on circumstantial evidence. Accordingly, we apply a two-step analysis. *State v. Silvernail*, 831 N.W.2d 594, 598 (Minn. 2013). First, we identify the circumstances proved, assuming that the jury resolved any factual disputes in a manner that is consistent with the verdict. *Id.* at 598-99. Second, we independently examine the reasonableness of the inferences the jury could draw from those circumstances. *Id.* at 599. All circumstances proved must be consistent with guilt and inconsistent with any

5

rational hypothesis except that of guilt. *State v. Anderson*, 784 N.W.2d 320, 329 (Minn. 2010).

The circumstances proved include the following: Kingsbury drank for three hours prior to driving; at around 1:30 a.m., Kingsbury drove his vehicle off the road and down a steep embankment; Kingsbury contacted his roommates to pick him up from the accident scene; Kingsbury returned to the scene with a tow truck around 6:45 a.m.; when the two law-enforcement officers encountered Kingsbury around 7:30 a.m., he exhibited multiple signs of intoxication and failed one field sobriety test; at 8:41 a.m., Kingsbury's alcohol concentration was 0.08; and the weather conditions were poor with blowing snow and sub-zero temperatures, but the trooper had not observed any other accidents that morning. The parties agree that Kingsbury's alleged post-driving consumption is not part of the circumstances proved, because it is inconsistent with the jury's determination of guilt. *See Silvernail,* 831 N.W.2d at 599 (explaining that courts must view the evidence "in the light most favorable to the verdict and assume that the jury believed the [s]tate's witnesses and disbelieved the defense witnesses" (quotation omitted)).

Kingsbury asserts that the circumstances proved are insufficient because they are consistent with the alternative inference that Kingsbury drove off the road due to the inclement weather conditions. We are not persuaded. Even if the weather or road conditions caused or contributed to Kingsbury's accident, Kingsbury's alternate hypothesis is unreasonable because it does not account for the other circumstances proved. Kingsbury admitted that he drank five beers before he drove. Both investigating officers observed multiple signs of impairment. The trooper testified that he had not

6

responded to or observed any other accidents that morning, despite the cold and blowing snow. And the facts that Kingsbury left the scene with friends rather than calling for emergency assistance, and did not reveal his post-driving consumption to the officers at the scene, are also indicative of driving while under the influence. *See Shephard*, 481 N.W.2d at 563 (noting "intoxication is a 'common reason' people leave the scene of accidents" and "[p]resumably, if the drinking had occurred after the accident, [the driver] would have said so since that fact obviously would have helped . . . ." (alteration in original)).

Finally, the jury was entitled to reject Kingsbury's testimony that he only had five beers before driving and he did not feel impaired. We defer to such credibility determinations, *Bliss,* 457 N.W.2d at 390, and assume that the jury resolved any factual disputes regarding Kingsbury's alcohol consumption in favor of the verdict. *Silvernail*, 831 N.W.2d at 598-99. On this record, the only rational inference to be drawn from the circumstances proved is that Kingsbury drove while under the influence of alcohol.

**Driving With an Alcohol Concentration of 0.08 or More**

To convict Kingsbury, the state had to prove that (1) he drove a vehicle, (2) his alcohol concentration was 0.08 or more within two hours of driving the vehicle, and (3) the driving occurred on or about January 5, 2014, in Wright County. *See* 10A *Minnesota Practice,* CRIMJIG 29.12 (2006). Kingsbury asserts that the direct evidence was insufficient to support the jury's guilty verdict in light of the lengthy period of time that elapsed between the accident and the breath test and his testimony that he consumed a large amount of alcohol following the accident. We disagree.

7

The jury heard testimony that Kingsbury drank before driving, drove his car into the ditch, and several hours later displayed multiple indicia of intoxication and had an alcohol concentration of 0.08. The trooper testified that alcohol concentration decreases with time, implying that Kingsbury's alcohol concentration would have been higher than 0.08 at the time of the accident. Together, this evidence is consistent with the reasonable conclusion that at the time Kingsbury was driving his alcohol concentration exceeded 0.08. And while Kingsbury testified that he drank alcohol following the accident, the jury was entitled to clearly reject this testimony. We defer to such credibility determinations. *See Shepard,* 481 N.W.2d at 563 (explaining that as the finder of fact the jury was free to credit defendant's testimony about post-driving alcohol consumption, but was not obliged to do so). On this record, we conclude the evidence was sufficient to prove that Kingsbury had an alcohol concentration of 0.08 or more within two hours of driving.

## II.     Remand is necessary to vacate one of Kingsbury's convictions.

Minn. Stat. § 609.04, subd. 1 (2014) provides:

> Upon prosecution for a crime, the actor may be convicted of either the crime charged or an included offense, but not both. An included offense may be any of the following:
> (1) A lesser degree of the same crime; or
> . . . .
> (4) A crime necessarily proved if the crime charged were proved; . . . .

Minn. Stat. § 609.04 (2014) also forbids "multiple convictions under different sections of a criminal statute for acts committed during a single behavioral incident." *State v.*

*Jackson,* 363 N.W.2d 758, 760 (Minn. 1985). In *State v. Clark*, 486 N.W.2d 166, 170-71 (Minn. App. 1992), we held that the district court erred by convicting the defendant of both driving while under the influence and driving with an alcohol concentration of 0.10. The proper procedure in such cases is for the district court to "adjudicate formally and impose sentence on one count only." *State v. LaTourelle*, 343 N.W.2d 277, 284 (Minn. 1984).

The state argues that the district court only adjudicated the conviction of the driving-while-under-the-influence offense on which it imposed a sentence. We disagree. The test is not whether the defendant was sentenced on multiple counts, but whether the official judgment of conviction demonstrates that multiple convictions were adjudicated. *State v. French,* 400 N.W.2d 111, 114 (Minn. App. 1987), *review denied* (Minn. Mar. 25, 1987). Here, the warrant of commitment shows that the district court convicted Kingsbury of both DWI offenses. Accordingly, we remand for the district court to vacate one of Kingsbury's convictions as required by Minn. Stat. § 609.04.

**Affirmed in part and remanded.**