# STATE v. ALEXANDER GRAHAM.[1]

January 4, 1929.

No. 26,997.

See note in L. R. A. 1917A, 313; 42 A. L. R. 1498; 2 R. C. L. 1212;
1 R. C. L. Supp. 747; 4 R. C. L. Supp. 163; 6 R. C. L. Supp. 144;
7 R. C. L. Supp. 75.

[1]Reported in 222 N. W. 909.

*G. A. E. Finlayson,* for appellant.

*G. A. Youngquist,* Attorney General, *James E. Markham,* Deputy Attorney General, and *Mason M. Forbes,* County Attorney, for the state.

OLSEN, C.

Defendant was convicted of the crime of driving an automobile upon a public street while under the influence of intoxicating liquor, in violation of L. 1927, p. 563, c. 412, § 61, 1 Mason Minn. St. § 2720-61, and appeals from an order denying his motion for a new trial.

It is urged that the evidence is insufficient to sustain the conviction. A brief reference to the evidence may be made. On the evening in question defendant spent about an hour in a company of hotel guests gathered in a guest room and the adjacent ballroom and hallway on the fourth floor of a hotel in Duluth. At least two of the men present had bottles, and there was drinking going on in this guest room. One of the guests played the piano in the ballroom, there was dancing, and they were having a good time. Defendant left the hotel about 11 o'clock that evening in his car and drove towards his home on one of the main streets of the city. When some seven or eight blocks away from the hotel, his car swerved from the right side of the street, across the street car track thereon, and over close to the left curb, where it collided with a car coming in the opposite direction, causing an accident and injury to some of the persons in that car. While defendant was at the hotel, the hotel manager was called up to the ballroom to stop the piano playing and noise. He saw defendant in a guest room in company with three or four other persons and spoke to him, protesting against the use of liquor there. He testified that two of the men, other than defendant, were under the influence of intoxicating liquor. He thought defendant was drunk. He could not explain what led him to that conclusion, except the way drunken men act. In defendant's presence, he asked one of the men if they were going to let defendant

drive his car home and offered to give them a room free of charge in order to keep defendant there. They stated that they would see that someone would go home with defendant. Two of the men in the car that was struck, and five police officers who saw and were with defendant shortly after the accident, testified that he appeared to be under the influence of intoxicating liquor at that time. One of the officers testified that he was drunk. The witnesses for the state all testified on cross-examination that they did not smell any liquor on defendant.

The accident happened on a Sunday evening. Defendant testified that he attended church and went from there to his home and then to the hotel; that he drank no intoxicating liquor at the hotel or anywhere else and was not under the influence of intoxicating liquor; that, as he was driving at the time of the accident, the cap on the accelerator rod on his car came off and dropped on the car floor; that he bent down and felt for the cap with one hand, and the next thing he knew the collision occurred; that he was thrown against the steering wheel and somewhat stunned and had only a dim recollection of events thereafter until some two hours later. He presented one witness who testified he was sober and not under the influence of liquor when he left the church and before going to the hotel. A friend of the defendant, who was with him most of the time while he was at the hotel, testified that defendant did not have anything to drink in his presence and that defendant was sober and not under the influence of liquor when he left the hotel.

Defendant is about 50 years of age, has a family, and has resided at Duluth for about 30 years. He is a chiropractor and has an office in that city.

We do not attempt to point out other facts and circumstances testified to by witnesses for defendant or for the state. It is sufficient to say that upon the record there was evidence of sufficient weight and character to justify the verdict under the rule requiring evidence sufficient to convince the jury of defendant's guilt beyond a reasonable doubt.

■ Errors are assigned upon the admission of testimony by the hotel manager that two other men in the gathering at the hotel were more or less under the influence of liquor, and his testimony as to what was said in defendant's presence, as hereinbefore stated. Evidence that other men in the same company with defendant were intoxicated and that there was liquor there, being consumed, would seem to be relevant circumstances. Evidence that liquor was at hand and being used was received and is not complained of. If that evidence was admissible, there is no reason why evidence of the effect of the liquor could not be shown. The state had the burden of showing that defendant was under the influence of liquor, and as part of that showing it was proper enough to show that liquor was present there and that it was intoxicating, which might be shown by its effect on anyone present. The evidence would seem to be material.

The rules as to the relevancy and materiality of evidence are the same in criminal as in civil cases. As to collateral matters, the trial judge has wide discretion. The subject is quite fully covered in State v. Upson, 162 Minn. 9, 201 N. W. 913.

The conversation between the hotel manager and one or more of the guests, in defendant's presence, was one of the facts and circumstances throwing light upon the situation in which defendant was found at the time. These statements explained and characterized the condition there found. Statements made in the presence of a person of such a nature that a denial or explanation from him would be natural, and he makes none, may also be admissible as admissions by conduct.

■ Objection was made to allowing several nonexpert witnesses for the state to give their opinions as to whether defendant was under the influence of intoxicating liquor at the time they saw him. The objection is that there was no sufficient foundation laid upon which to base such opinions. The matter of the foundation for opinion evidence is largely a matter for the trial court. The foundation laid is before the court and the jury. It may be such that the opinion given carries no great weight, but the weight to be

given thereto is for the jury, to be based on the facts shown. Without attempting to recite the evidence, we hold that it was not error to permit these witnesses to give their opinions.

■ The constitutionality and validity of the law is questioned. It is urged that it is invalid because of uncertainty and because it in no manner defines or limits the term "under the influence of intoxicating liquor."

Prior to 1927 the statute made it an offense for any person to operate a motor vehicle while in an intoxicated condition. The act of 1927, L. 1927, p. 563, c. 412, 1 Mason Minn. St. §§ 2720-1 to 2720-69, makes it an offense for any person, while under the influence of intoxicating liquor or narcotics, to drive a vehicle upon a public highway. The act of 1927 extended the statute by including narcotics and by applying it to the driver of any vehicle, whether a motor vehicle or not. It substituted the words "under the influence of intoxicating liquor" in place of the words "in an intoxicated condition." The statute is a police regulation. The original appears to be L. 1911, p. 493, c. 365, § 21, and so far as appears has stood unchallenged. The primary purpose of the law is to advance the safety of travel on public highways. The expression "under the influence of intoxicating liquor" is in common, everyday use by the people. It is older than this law. When used in reference to the driver of a vehicle on the public highways, it appears to have a well understood meaning. The trial court, in the case of Elkin v. Buschner, 1 Monag. (Pa.) 359, 361, 16 A. 102, 104, in discussing the question as to when a man is intoxicated, used this language in instructing the jury:

"Whenever a man is under the influence of liquor so as not to be entirely at himself, he is intoxicated; although he can walk straight, although he may attend to his business and may not give any outward and visible signs to the casual observer that he is drunk, yet if he is under the influence of liquor so as not to be at himself, so as to be excited from it and not to possess that clearness of intellect and that control of himself that he otherwise would have, he is intoxicated."

This instruction was approved. It would seem that the statements so made express quite clearly the meaning of the words "under the influence of intoxicating liquor." When a person is so affected by intoxicating liquor as not to possess that clearness of intellect and control of himself that he otherwise would have, he is under the influence of intoxicating liquor. That would appear to be the common understanding of the expression, and well known. In that light the use of the expression in the statute renders the law neither obscure nor uncertain. We hold the statute to be constitutional and valid.

Several courts have discussed the meaning of the words "intoxication," "intoxicated" and "drunk," and have pointed out that there may be several degrees of intoxication. Different definitions have been given under differing statutes and as applied to differing contracts or situations. The following cases may be referred to: State v. Pierce, 65 Iowa, 85, 21 N. W. 195; Sapp v. State, 116 Ga. 182, 42 S. E. 410; Smith v. People, 141 Ill. 447, 31 N. E. 425; Wadsworth v. Dunnam, 98 Ala. 610, 13 So. 597; Lafler v. Fisher, 121 Mich. 60, 79 N. W. 934. The case of Bakalars v. Continental Cas. Co. 141 Wis. 43, 46, 122 N. W. 721, 25 L.R.A. (N.S.) 1241, 18 Ann. Cas. 1123, cited by appellant, involved the construction of the expression "under the influence of any intoxicant," used in an accident insurance policy. The appeal was by the insurance company. It was held that the intimate association of the words "insane or delirious" with the words quoted at once suggested that the influence of intoxicants intended to be described in the policy had some similarity in character with insanity or delirium, and hence had a more limited meaning than otherwise would have been the case. The instruction that the words used in that connection meant "such degree of influence as would materially impair the deceased's ability to care for himself and guard against casualties," was sustained. The case is clearly distinguishable from our present case.

The remaining assignments of error are directed to the charge of the court. The court gave to the jury the definition of the crime in the words of the statute and instructed that, if the jury found

that the state had proven beyond a reasonable doubt that defendant was at the time under the influence of intoxicating liquor, they should find him guilty. It is claimed that the court erred in not defining the words in question, and that it should have charged that before they could convict they must find from the evidence, beyond a reasonable doubt, that the defendant was under the influence of intoxicating liquor to the extent of being intoxicated, or to such an extent that his ability to operate an automobile with ordinary care was impaired.

Where there is no uncertainty as to the meaning of the words of the statute and the meaning is reasonably clear, there is no necessity for definitions or explanations. That rule would seem to apply here. Defendant took no exceptions to the charge and made no request for any further charge. It was not a case where the court was obliged to give further instructions in order fairly to present the issues. State v. O'Hagan, 124 Minn. 58, 144 N. W. 410; State v. Bresee, 137 Iowa, 673, 114 N. W. 45; 24 L.R.A.(N.S.) 103.

Order affirmed.