**STATE of Minnesota, Respondent,**

v.

**Robin Daniel DUEMKE, Appellant.**

**No. C5-83-1921.**

Court of Appeals of Minnesota.

June 19, 1984.

428

Brian H. Miller, Minneapolis, for appellant.

Hubert H. Humphrey III, Atty. Gen., St. Paul, James R. Clifford, County Atty. Chisago County, Clair F. Cole, Asst. County Atty., Center City, for respondent.

Considered and decided by SEDGWICK, P.J., and PARKER and CRIPPEN, JJ., with oral argument waived.

## OPINION

CRIPPEN, Judge.

Defendant appeals a judgment of conviction for driving, operating, or being in physical control of a vehicle, a gross misdemeanor due to occurrence of the offense before reinstatement of a revoked drivers license, Minn.Stat. § 169.129. He contends that evidence was insufficient to show his physical control of the vehicle, or to show his driving or operating the vehicle. He also claims the trial court committed reversible error in its instructions on the elements of the offense, and in omitting an instruction on the use of impeachment evidence.

The state contends that direct and circumstantial evidence reasonably proves the offense, and that appellant forfeited requests for instructions by failing to state them during the trial.

We affirm the judgment.

## FACTS

On 21 November 1982, Chisago City Policeman Richard J. Erdman investigated a Buick Opel automobile located in a ditch adjoining a county road. The roads were slippery, covered with snow and sleet. The vehicle appeared to be stuck, and tracks around the vehicle showed travel off the roadway and forward and reverse movements in the ditch.

Defendant Robert Daniel Duemke was found by the officer in the driver's seat of the Opel car. Defendant was asleep, slumped over the wheel. The motor was not running but keys were in the ignition.

Officer Erdman found it difficult to awaken defendant. After awakening him, he asked defendant to complete field sobriety tests. The officer was of the opinion that the defendant was under the influence of alcohol, based on the odor of defendant's breath, the slurring of his speech, and the results of field sobriety testing. Officer Erdman placed defendant in his squad car and discussed defendant's drivers license. Defendant expressed surprise that his uncle had not returned to the scene, saying that he was "following his uncle" or "behind his uncle." A moment later, defendant made a comment, "at least I was [?] endangering lives driving across the field."

The jury heard different accounts as to how the Opel had been driven into the ditch. Robert Gassler, defendant's uncle, testified that he had driven the vehicle into the ditch and placed defendant, who was asleep, behind the steering wheel. Officer Erdman testified that defendant at one point said the Opel was driven into the ditch by a woman who was accompanying Gassler and defendant.

Robert Gassler was impeached regarding his statements to Officer Erdman in a telephone conversation several hours after defendant was arrested. Gassler had told Erdman that defendant might have had too many drinks, and Gassler made no claim that he was driving the Opel.

## ISSUES

1. Is the evidence sufficient to establish beyond a reasonable doubt that appellant committed an aggravated D.W.I. offense?

2. Did defendant forfeit his claim for a cautionary instruction on use of impeachment evidence?

3. Did the trial court give proper instructions on elements of a D.W.I. offense?

## ANALYSIS

1.

The Minnesota Supreme Court has established the standard for reviewing the sufficiency of evidence:

In reviewing a claim of sufficiency of the evidence we must determine whether, under the facts in the record and any legiti-

mate inferences that can be drawn from them, a jury could reasonably conclude that the defendant was guilty of the offense charged.... The evidence must be viewed in the light most favorable to the prosecution and it is necessary to assume that the jury believed the state's witnesses and disbelieved any contrary evidence.

*State v. Ulvinen,* 313 N.W.2d 425, 428 (Minn.1981).

Appellant characterizes much of the state's evidence as circumstantial. He argues, as a result, that his conviction cannot be sustained unless the "reasonable inferences from such evidence are consistent only with defendant's guilt and inconsistent with any rational hypothesis except that of his guilt." *State v. Threinen,* 328 N.W.2d 154, 156 (Minn.1983).

■ There was sufficient direct evidence to sustain conviction of defendant for driving or operating or having physical control of the vehicle which he occupied. The jury could reasonably conclude from his own statements that defendant had been the driver of the vehicle when it entered the ditch and moved in the ditch. More important, the direct evidence on the circumstances of defendant when he was found is sufficient to permit the jury to conclude that he was in physical control of the vehicle.

The conviction is also sustained by circumstantial evidence, inferences the jury could reasonably make from the situation of defendant when he was found. The evidence was inconsistent with the notion that another person drove the defendant into the ditch and moved him while asleep to a position behind the steering wheel.

■ Defendant argues that evidence on his sleep precludes a finding on the occurrence of a conscious offense. An unlawful intention or state of mind is not an element of a D.W.I. charge. See *State v. Kremer,* 262 Minn. 190, 114 N.W.2d 88 (1962). Further, evidence justifying a conviction is not confined to the circumstances of defendant while asleep.

**2.**

Appellant introduces numerous challenges on jury instructions which were not raised at trial. The first of these regards the omission of a cautionary instruction on the use of impeachment evidence. See 10 Minn. Practice (CRIMJIG, 3.12(3)) 23.

■ The instruction on use of evidence would have been appropriate in light of the impeachment of Robert Gassler, defendant's uncle, who admitted he had told the police officer shortly after the incident that defendant may have had "too many drinks," and who admitted he had not said in the early conversation that he rather than defendant had driven the Buick Opel into the ditch. This conversation of Gassler was confirmed by the arresting police officer.

Rule 105, Minnesota Rules of Evidence, provides:

When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, *upon request,* shall restrict the evidence to its proper scope and instruct the jury accordingly. (emphasis added)

Absent a request, use of the prior statements is unlimited, and the court need not give the cautionary instruction. *State v. Marchand,* 302 Minn. 510, 225 N.W.2d 537 (1975).

It does not follow that trial counsel was incompetent in failing to demand a cautionary instruction. The Minnesota Supreme Court said in *State v. Heinkel,* 322 N.W.2d 322, 326 (Minn.1982):

... [T]he test is whether the attorney in the case under consideration exercised the customary skills and diligence that a responsibly competent attorney would exercise under similar circumstances. The concern is, therefore, not with the general skills of the attorney but with whether he did a reasonably competent job of trying to assure the defendant a fair trial. A defendant claiming ineffec-

tive assistance has the burden of proving that he is entitled to a new trial.

■ The impeachment of witness Gassler was extensive. Independent of the impeachment evidence, the jury had sufficient evidence on defendant's condition and the accusation that he was the driver of the Buick Opel. Omission of a request for a cautionary instruction was too insubstantial to constitute incompetence.

### 3.

Defendant next challenges the trial court's definition of the condition of under the influence of alcohol. In its charge to the jury, the trial court said:

> The expression 'under the influence of alcohol' covers not only the well-known and easily recognized condition of intoxication, but any abnormal mental or physical condition which is the result of drinking alcohol and which tends to deprive the person of the clearness of intellect and control which he would otherwise possess.

The trial court added:

> A person who is even to the slightest extent under the influence of alcohol is to some extent less able either mentally or physically or both to exercise the clear judgment and steady hand necessary to handle an automobile with safety to himself and to others.

The description of the condition of "under the influence" makes no reference to driving ability. Further, the instructions include the observation that safe handling of a car is always adversely affected when a person is "even to the slightest extent" under the influence of alcohol.

Defendant argues that this definition conflicts with this statement of the Minnesota Supreme Court in *Anderson v. State Department of Public Safety*, 305 N.W.2d 786 (Minn.1981):

> Without intending to fully define what conduct is covered by the phrase 'driving while under the influence' of alcohol, we merely conclude that it was meant to include the act of driving a motor vehicle

while ability or *capacity to drive is impaired* by alcohol.

The statement was part of the court's analysis of similarities between the Minnesota D.W.I. statute and a Colorado statute, in a case where a license revocation was based on a Colorado violation.

■ We conclude the trial court did not err in its instruction. Minnesota's D.W.I. statute deals with driving activity when a person is in a certain condition. If that condition exists, the law prohibits driving, suggesting an assumption that driving is adversely affected by the condition.

The trial court's instruction complies with this fundamental declaration of the Minnesota Supreme Court:

> The expression 'under the influence of intoxicating liquor' is in common, everyday use by the people. It is older than this law.
>
> . . . .
>
> When a person is so affected by intoxicating liquor, as not to possess that clearness of intellect and control of himself that he otherwise would have, he is under the influence of intoxicating liquor. That would appear to be the common understanding of the expression, and well known.

*State v. Graham*, 176 Minn. 164, 168, 169, 222 N.W. 909 (1929). These views are not in conflict with the *Anderson* decision. That case focused on comparisons of Minnesota statute with a Colorado law dealing with "driving while ability impaired." The Supreme Court decided that our statute included driving with impaired ability. The court expressly declined to fully define our statute. Its observation takes nothing away from the assumption that driving ability is impaired by a condition, "under the influence," which may be independently measured.

■ Defendant thinks improper the statement that driving ability is affected by the condition of "under the influence" even when a person is "to the slightest extent" in that condition. It is true that the language "even to the slightest extent," viewed independently, is misleading. We

**432**

do not approve use of the phrase. However, any prejudice to defendant on the subject is overcome by this additional instruction stated by the trial court:

It is not unlawful to drive a motor vehicle after drinking an alcoholic beverage. The prohibition is against driving or being in physical control while under the influence of alcohol."

The state adds, correctly, that defendant's claim on these instructions was forfeited by his failure to seek different instructions during trial. Contentions on trial procedure cannot be introduced on appeal unless they concern matters of fundamental law, and absent a showing of plain errors which substantially prejudice defendant's rights. Rule 26.03, subd. 18(3), and Rule 31.02, Minn.R.Crim.P.; *State v. Gorman*, 306 N.W.2d 123 (1981); *Peterson v. State*, 282 N.W.2d 878 (1977). There were no fundamental errors in the trial court's instructions on the condition of "under the influence." Further, we reject defendant's argument that an effort to seek refinement of the instructions was a part of the reasonable burden of defendant's counsel.

The next contention of defendant is on the content of this instruction:

The phrase 'physical control' means being in a position to exercise dominion or control over the vehicle. Thus, a person in physical control of a vehicle if he has the means to initiate any movement of that vehicle and he is in close proximity to the operating controls of the vehicle, and this is true whether the vehicle can be driven upon the highway at that point or not.

This instruction coincides with common usage and with the apparent scope of Minnesota statute on D.W.I. See *State Department of Public Safety v. Juncewski*, 308 N.W.2d 316 (Minn.1981). For reasons already noted, the definition need not refer to knowledge or the state of mind of the defendant.

Defendant complains, erroneously, regarding the trial court instruction on reasonable doubt. An adequate instruction on proof beyond a reasonable doubt need not include a statement demanding acquittal when evidence is susceptible to a conclusion of innocence. See 10 Minn. Practice (CRIMJIG 3.03) 14.

Finally, defendant complains of omissions in final instructions on the topics of circumstantial evidence and on the credibility of witnesses. Adequate information on these subjects was given at the start of the trial and need not be repeated in final instructions. Rule 26.03, subd. 18(4).

## DECISION

Evidence in the case is sufficient to sustain the conviction of defendant. His appeal on jury instructions is without merit.

Affirmed.