# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2022-KA-00754-SCT

*RITA ANN JENKINS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/22/2022 |
| TRIAL JUDGE: | HON. CALEB ELIAS MAY |
| TRIAL COURT ATTORNEYS: | MITCHELL DEE THOMAS |
| | CHRISTOPHER MORGAN POSEY |
| | STEVEN SIMEON KILGORE |
| | P. SHAWN HARRIS |
| COURT FROM WHICH APPEALED: | NESHOBA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | STEVEN SIMEON KILGORE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 09/21/2023 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**RANDOLPH, CHIEF JUSTICE, FOR THE COURT:**

¶1.     Rita Ann Jenkins appeals her conviction for driving under the influence (DUI), third offense. She argues the trial judge erred by granting a jury instruction that eliminated the prosecution's burden to prove she was "driving in a state of intoxication that lessen[ed] [her] normal ability for clarity and control." *Leuer v. City of Flowood*, 744 So. 2d 266, 269-70 (Miss. 1999) (citing *Gov't of V.I. v. Steven*, 134 F.3d 526, 528 (3d Cir. 1998); *Weston v. State*, 65 P.2d 652, 654 (Ariz. 1937); *State v. Graham*, 222 N.W. 909, 911 (Minn. 1929)).

She also argues the trial judge erred by denying a jury instruction that presented her theory of defense. Finding no reversible error, we affirm Jenkins's conviction and sentence.

## FACTUAL AND PROCEDURAL HISTORY

¶2. On July 30, 2021, at approximately 1:47 a.m., Deputy Chris Strickland was driving on County Road 147 toward an intersection with Highway 488 in Philadelphia, Mississippi. Once at the intersection, he observed a vehicle turning off of Highway 488 and onto County Road 147.

¶3. As the vehicle turned, it nearly struck a stop sign and veered toward Strickland's SUV. Strickland slammed on his brakes and pulled onto the shoulder of the road to avoid being struck. Strickland immediately initiated his blue lights and made a U-turn. The vehicle pulled off on a gravel section near the fire department. Strickland pulled over behind the vehicle.

¶4. Strickland exited his SUV, walked up to the vehicle, and explained to the driver why he stopped her. He identified the driver of the vehicle as the defendant, Rita Ann Jenkins. As he spoke to Jenkins, Strickland smelled the odor of alcohol and noticed an open can of Bud Light in the center console. He also observed that Jenkins was slurring her words and that her eyes were red and moving all over the place.

¶5. When Strickland asked if she had been drinking, Jenkins responded that she had consumed two beers. Jenkins also informed Strickland that she had just been in an altercation with her boyfriend.

¶6. To rule out the possibility that the alcohol odor was confined to the vehicle, Strickland

2

asked Jenkins to step out of the vehicle. When she exited the vehicle, he observed that she was unsteady and required assistance to stand up. She used the vehicle as a handrail as she walked to the back of the vehicle. Strickland confirmed that the odor was coming from Jenkins's person and her breath. He issued her a ticket for careless driving.

¶7.     Strickland then called Deputy Julian Willis, a certified DUI officer, to the scene to perform a field sobriety test. When Willis arrived, he also smelled the strong odor of alcohol coming from Jenkins. He also observed that Jenkins's eyes were bloodshot and that her speech was slurred. When asked how many beers she had consumed, Jenkins changed her answer from two to four. She also told Willis that she had been drinking "to feel better or keep herself from having emotional issues." "[S]he had received bad news[,] and . . . she didn't really care." When asked about the open container by Willis, Jenkins told him that she had just opened the can.

¶8.     Willis attempted to administer the walk-and-turn test and the one-legged-stand test, but Jenkins refused to perform either test. Jenkins did allow Willis to perform a portable breath test, which indicated that alcohol was present on her breath. Additionally, Willis determined that Jenkins had two prior DUI convictions within the past five years.

¶9.     Willis transported Jenkins to the county jail. There, he offered her an Intoxilyzer 8000 test, which is used to determine blood alcohol content, but Jenkins refused the test. Willis issued her a ticket for driving under the influence.

¶10.    At trial, the prosecution presented the testimony of Strickland and Willis and the certified copies of Jenkins's two prior DUI convictions. The defense presented the testimony

of Jenkins.

¶11.   Jenkins testified that she consumed three beers before 2 p.m. on July 29. She then slept until about 1:30 a.m. on July 30. When she awoke, Jenkins found her boyfriend sitting and drinking in her car with another woman. After an altercation with her boyfriend, Jenkins grabbed her things and left in her car. A few minutes later, she drove through the intersection of County Road 147 and Highway 488 and pulled over to look for a cigarette.

¶12.   She saw a police officer, who later identified himself as Deputy Strickland, make a U-turn, turn on his blue lights, and pull in behind her. Jenkins was unsure why he had pulled behind her. She denied almost hitting a stop sign or Strickland's SUV.

¶13.   When Willis arrived, Jenkins informed him that she would be unable to do the walk-and-turn test and the one-legged-stand test because of her heel spurs. She also testified that although she initially refused to take the Intoxilyzer 8000 test, she later changed her mind and asked to take it, but Willis refused her request.

¶14.   During her testimony, Jenkins sought to explain the open beer can in her car, her appearance that evening, and the reason she smelled of alcohol. She stated the beer can was not hers and that she did not know it was in her car. She stated that her appearance was due to having just woken up minutes before encountering the officer. And she did not dispute that she smelled of alcohol but claimed it was due to her drinking three beers before 2 p.m. the previous day.

¶15.   Jenkins's case was submitted to a jury of her peers, which found her guilty of driving under the influence (DUI), third offense, pursuant to Mississippi Code Section 63-11-

4

30(1)(a) and (2)(c) (Rev. 2022). The trial judge sentenced Jenkins to a total sentence of five years, with two years suspended and three years to serve. The judge denied Jenkins's motion for a new trial.

## STATEMENT OF THE ISSUES

¶16.    Jenkins presents two issues: (1) whether the trial judge erred by granting jury instruction S-8, and (2) whether the trial judge erred by refusing jury instruction D-7.

## DISCUSSION

### I.    Whether the trial judge erred by granting jury instruction S-8.

¶17.    Jenkins argues that jury instruction S-8 eliminated the prosecution's burden to prove that she was "driving in a state of intoxication that lessen[ed] [her] normal ability for clarity and control." *Leuer*, 744 So. 2d at 269-70 (citing *Steven*, 134 F.3d at 528; *Weston*, 65 P.2d at 654; *Graham*, 222 N.W. at 911). "This Court reviews jury instructions under an abuse-of-discretion standard." *Roby v. State*, 183 So. 3d 857, 872 (Miss. 2016) (citing *Thompson v. State*, 119 So. 3d 1007, 1009 (Miss. 2013)). "The jury instructions are to be read as a whole, with no one instruction to be read alone or taken out of context." *Watkins v. State*, 101 So. 3d 628, 633 (Miss. 2012) (internal quotation marks omitted) (quoting *Bailey v. State*, 78 So. 3d 308, 315 (Miss. 2012)). "If the jury instructions, read as a whole, fairly announce the law of the case and create no injustice, no reversible error will be found." *Windless v. State*, 185 So. 3d 956, 960 (Miss. 2015) (citing *Harris v. State*, 861 So. 2d 1003, 1014 (Miss. 2003)).

¶18.    Jury instruction S-8 provided:

> The Court instructs the Jury that the State is not required to prove that alcohol impaired a defendant's ability to drive, or the level of impairment, only

that the Defendant was driving a motor vehicle while she was under the influence of intoxicating liquor.

¶19. Jury instruction C-1 provided:

> The Court instructs the Jury that the State must prove to you beyond a reasonable doubt that Rita Ann Jenkins was operating her motor vehicle at such a time when she was under the influence of intoxicating liquor. If you find that the State of Mississippi failed to prove to you beyond a reasonable doubt that she was under the influence of intoxicating liquor, then you must return a verdict of Not Guilty.

¶20. Jenkins was convicted of driving under the influence pursuant to Mississippi Code Section 63-11-30(1)(a) (Rev. 2022). "Section 63-11-30(1)[(a)] states in pertinent part '[i]t is unlawful for any person to drive or otherwise operate a vehicle within this state who is under the influence of an intoxicating liquor.'" *McLendon v. State*, 945 So. 2d 372, 385 (Miss. 2006) (second alteration in original) (quoting Miss. Code Ann. § 63-11-30(1)(a) (Rev. 2004)).

¶21. Therefore, "the State was required to prove beyond a reasonable doubt (1) that [Jenkins] was operating a motor vehicle, and (2) [that Jenkins] was under the influence of intoxicating liquor." *Id.* (citing § 63-11-30(1)(a); *McCool v. State*, 930 So. 2d 465, 467 (Miss. Ct. App. 2006)). As jury instruction S-8 correctly states, Section 63-11-30(1)(a) does not require the State "to prove that alcohol impaired a defendant's ability to drive, or the level of impairment." *See Valentine v. State*, 322 So. 3d 417, 427-28 (Miss. 2021); *see also Borsi v. State*, 339 So. 3d 191, 201 (Miss. Ct. App. 2022) ("Borsi misunderstands what the State was required to prove under the statute—not his level of impairment, but whether he was under the influence.").

¶22. In prior cases, this Court has defined "under the influence" as "driving in a state of intoxication that lessens a person's normal ability for clarity and control." *Clemons v. State*, 199 So. 3d 670, 674 (Miss. 2016) (internal quotation marks omitted) (quoting *Leuer*, 744 So. 2d at 268). "This common understanding is consistent with the obvious purpose of drunk driving statutes; i.e., to prevent people from driving unsafely due to an alcohol-induced diminished capacity." *Id.* (internal quotation marks omitted) (quoting *Steven*, 134 F.3d at 528).

¶23. In proving such diminished capacity, the State is not required to offer evidence of impairment to the defendant's driving. It may instead offer evidence, as was offered in this case, of slurred speech, bloodshot eyes, an inability to stand or walk, and the odor of alcohol on the defendant's person. *Moore v. State*, 151 So. 3d 200, 203 (Miss. 2014) ("The Court has defined sufficient evidence to include 'slurred speech, bloodshot eyes, or erratic driving.'" (quoting *Evans v. State*, 25 So. 3d 1054, 1059 (Miss. 2010))).

¶24. Ultimately, Jenkins's argument that instruction S-8 removed the prosecution's burden to prove that she was "driving in a state of intoxication that lessen[ed] [her] normal ability for clarity and control" is unavailing. *Leuer*, 744 So. 2d at 268. The jury was instructed repeatedly that the State had to prove Jenkins was driving while under the influence of intoxicating liquor. And "under the influence" literally means "driving in a state of intoxication that lessens a person's normal ability for clarity and control." *Clemons*, 199 So. 3d at 674 (internal quotation marks omitted) (quoting *Leuer*, 744 So. 2d at 268). Evidence of an impairment to the defendant's driving is not required to convict a defendant of driving

7

under the influence under Section 63-11-30(1)(a). Jury instruction S-8 correctly stated the law. Therefore, the trial judge did not abuse his discretion by granting that instruction.

## II. Whether the trial judge erred by refusing jury instruction D-7.

¶25. Jenkins argues that she was denied due process by not receiving a jury instruction on her theory of defense. "A defendant is entitled to have jury instructions given which present [her] theory of the case; however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence." *Victory v. State*, 83 So. 3d 370, 373 (Miss. 2012) (internal quotation marks omitted) (quoting *Newell v. State*, 49 So. 3d 66, 74 (Miss. 2010)). "[I]f the instructions fairly announce the law of the case and create no injustice, no reversible error will be found." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Rubenstein v. State*, 941 So. 2d 735, 785 (Miss. 2006)).

¶26. At the jury instruction conference, Jenkins's counsel initially proposed the following version of jury instruction D-7:

> The Court instructs the jury that, the [S]tate must prove to you beyond a reasonable doubt, that Rita Ann Jenkins, was operating her motor vehicle, at such a time as she was impaired from alcohol. If you find that Rita Ann Jenkins consumed alcohol on the date in question, but the State of Mississippi failed to prove to you, beyond a reasonable doubt, that she was impaired as a result of alcohol consumption, then you must return a verdict of Not Guilty.

¶27. When refusing this version of D-7, the trial judge found that the instruction improperly stated the law because it required the State to prove the defendant was "impaired from alcohol." As the judge correctly noted, the State is not required to prove that the defendant was impaired. Under Section 63-11-30(1)(a), the State is only required to prove

8

that the defendant was driving a vehicle at a time when she was under the influence of intoxicating liquor. *McLendon*, 945 So. 2d at 385 (citing § 63-11-30(1)(a); *McCool*, 930 So. 2d at 467). Jenkins even concedes in her brief to this Court that this version of the instruction was properly refused, stating, "[a]s initially worded, it was not error to refuse D-7." Because this version of jury instruction D-7 incorrectly stated the law, the trial judge did not abuse his discretion by refusing it.

¶28. Following discussions with the State, Jenkins's counsel proposed the following revised version of jury instruction D-7:

> The Court instructs the jury that, the [S]tate must prove to you beyond a reasonable doubt that Rita Ann Jenkins was operating a motor vehicle, at such a time when she was under the influence of intoxicating liquor. If you find that Rita Ann Jenkins had [drunk] intoxicating liquor before the officers encountered her, but the State of Mississippi failed to prove to you beyond a reasonable doubt that she was under the influence of intoxicating liquor, then you must return a verdict of Not Guilty.

¶29. The trial judge refused the instruction as proposed by the defendant after the State objected to language in the second sentence. The judge then removed the objectionable language and made the instruction jury instruction C-1:

> The Court instructs the jury that the State must prove to you beyond a reasonable doubt that Rita Ann Jenkins was operating a motor vehicle at such a time when she was under the influence of intoxicating liquor. If you find that the State of Mississippi failed to prove to you beyond a reasonable doubt that she was under the influence of intoxicating liquor, then you must return a verdict of Not Guilty.

¶30. Ultimately, the jury was instructed on all but a small portion of the revised version of jury instruction D-7. The omitted language was as follows: "Rita Ann Jenkins had [drunk] intoxicating liquor before the officers encountered her, but . . . ." Jenkins argues that the

9

omitted language was necessary "to avoid a strict liability misreading of the other instructions, that is, an instruction was needed to counter the conclusion that 'she drank, therefore, she's guilty.'"

¶31.   But, again, the jury was instructed multiple times that the prosecution had to prove beyond a reasonable doubt that Jenkins was under the influence of intoxicating liquor. The jury was never led to believe that evidence of the mere consumption of intoxicating liquor was sufficient to convict Jenkins of driving under the influence. Ultimately, the "defendant is entitled to have the jury instructed on [her] 'theory of the case—*so long as that theory constitutes a legal defense to the charged offense*, is not repetitious, and is supported by the evidence.'" *Myers v. State*, 153 So. 3d 581, 585 (Miss. 2014) (emphasis added) (quoting *Flowers v. State*, 51 So. 3d 911, 913-14 (Miss. 2010)). Jenkins, however, fails to cite any decisions from this Court recognizing that mere consumption of intoxicating liquor "constitutes a legal defense to" driving under the influence. *Id.* (quoting *Flowers*, 51 So. 3d at 913-14).

¶32.   Rather, such a defense is more an argument that the prosecution has not proved, beyond a reasonable doubt, that Jenkins was driving under the influence, which the jury was instructed on repeatedly. Driving "'under the influence' . . . is 'commonly understood to mean driving in a state of intoxication that lessens a person's normal ability for clarity and control.'" *Clemons*, 199 So. 3d at 674 (quoting *Leuer*, 744 So. 2d at 269). Jenkins's argument was merely that she was not driving in such a state. Because Jenkins's proposed instruction did not correctly state the law and was fairly covered by other instructions, the

trial judge did not abuse his discretion by refusing the instruction.[1]

## CONCLUSION

¶33.   The trial judge did not abuse his discretion by granting jury instruction S-8 and by denying jury instruction D-7. Additionally, Jenkins abandoned her claim of ineffective assistance of counsel by failing to identify that issue in her statement of issues. Therefore, we affirm Jenkins's conviction and sentence.

¶34.   **AFFIRMED.**

**COLEMAN, BEAM, CHAMBERLIN AND GRIFFIS, JJ., CONCUR. MAXWELL, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY COLEMAN, BEAM, CHAMBERLIN AND GRIFFIS, JJ. KITCHENS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, P.J., AND ISHEE, J.**

**MAXWELL, JUSTICE, SPECIALLY CONCURRING:**

¶35.   I agree Rita Ann Jenkins's conviction for driving under the influence, third offense, should be affirmed.  But there is no doubt Jury Instruction S-8 could have been clearer.  Still, even if the majority had found instructional error, the overwhelming evidence of Jenkins's guilt would have rendered it harmless beyond a reasonable doubt.  *States v. State*, 88 So. 3d 749, 758 (Miss. 2012).

¶36.   This was not a "mere consumption" case based solely on a person pulled over with

---

[1]Jenkins alternatively argues that her counsel rendered ineffective assistance by failing to present a proper mere consumption instruction. Jenkins, however, failed to identify this claim in her statement of issues. "No issue not distinctly identified shall be argued by counsel, except upon request of the court, but the court may, at its option, notice a plain error not identified or distinctly specified." M.R.A.P. 28(a)(3). "Because [Jenkins] did not identify [her] claim of ineffective assistance of counsel as an issue on appeal, [she] has abandoned that claim. Therefore, we need not address it." *Arrington v. State*, 267 So. 3d 753, 756-57 (Miss. 2019).

11

an open container. At 1:47 am, an officer saw Jenkins almost plow into a stop sign and

nearly sideswipe his SUV. To avoid being hit, the officer had to stomp his breaks and veer

to the road's shoulder. And when pulled over, Jenkins had an open beer in her console,

smelled of alcohol, and admitted she had been drinking. Her eyes were bloodshot and

darting, and she could not speak clearly. She also stumbled when ordered out of the

car—having to lean on her vehicle when walking to the back of it. So there was

overwhelming evidence that Jenkins was driving while drunk. Thus, even if we were to find

error in Instruction S-8, it was harmless beyond a reasonable doubt. *Spiers v. State*, 361 So.

3d 643, 657 (Miss. 2023).[2]

**The Alcohol Related DUI and Instruction S-8**

¶37. Section 63-11-30 criminalizes operating a vehicle under the influence of alcohol or

"other impairing substances." Miss. Code. Ann. § 63-11-30 (Rev. 2022). The pertinent part

of the statute for purposes of this case says:

> (1)     It is unlawful for a person to drive or otherwise operate a vehicle within
>            this state if the person:
>
> (a)     Is under the influence of intoxicating liquor;
>
> (b)     Is under the influence of any other substance that has
>            impaired the person's ability to operate a motor vehicle

---

[2] "There is 'no per se rule requiring automatic reversal whenever jury instructions contain conflicting or potentially confusing explanations of the law. In such cases, we apply traditional harmless-error or plain-error analysis, depending upon whether the defendant objected to the instruction at trial.'" *Spiers*, 361 So. 3d at 657 (quoting *Johnson v. State*, 290 So. 3d 1232, 1240 (Miss. 2020)); *see also Milano v. State*, 790 So. 2d 179, 186 (Miss. 2001) (holding that, based on the particular facts of the case, any error in giving a jury instruction was harmless).

12

Miss. Code. Ann. § 63-11-30(1)(a), (1)(b).

¶38.    This is not a so-called statutory DUI case where Jenkins was charged with having a certain prohibited alcohol concentration in her blood, breath, or urine. *See* Miss. Code Ann. § 63-11-30(1)(d). Rather she was charged under Section (1)(a) with a common law alcohol-based DUI. And under Section 1(a), the State only had to prove—(1) Jenkins was operating a motor vehicle, and (2) she was under the influence of intoxicating liquor. Miss. Code Ann. § 63-11-30(1)(a). These are the two elements set out by our Legislature.

¶39.    But at trial, the judge gave Jury Instruction S-8, over Jenkins's objection, which included some surplusage not found in Section (1)(a). Instruction S-8 says:

> The Court instructs the Jury that the State is *not required to prove that alcohol impaired* a defendant's ability to drive, or the level of impairment, only that the Defendant was driving a motor vehicle while she was under the influence of intoxicating liquor.

(Emphasis added.)

¶40.    The instruction is technically correct because the phrase "impaired the person's ability to operate a motor vehicle" is found only in Section (1)(b)—the section that criminalizes driving under the influence of "any other substance [(than intoxicating liquor)]." So it is not a required element of the Section (1)(a) charge. Thus, the State need not prove it to establish common law DUI. But there is certainly potential for confusion by including this non-element language—that being the instruction may be read to suggest proving someone is "under the influence of intoxicating liquor" is somehow different than proving someone's consumption of alcohol impaired his or her ability to drive.

¶41.    Even the majority, in reviewing Instruction S-8, acknowledges that "[t]he phrase

13

'under the influence,' as used in this subsection, is 'commonly understood to mean driving in a state of intoxication that lessens a person's normal ability for clarity and control.'" *Clemons v. State*, 199 So. 3d 670, 674 (Miss. 2016) (quoting *Leuer v. City of Flowood*, 744 So. 2d 266, 269 (Miss. 1999)); Maj. Op. ¶ 22. "[T]he obvious purpose of drunk-driving statutes . . . [is] to prevent people from driving unsafely due to an alcohol-induced diminished capacity." *Leuer*, 744 So. 2d at 269 (quoting *Gov't of Virgin Islands v. Steven*, 134 F.3d 526, 528 (3d Cir. 1998)). And to the extent the majority says there is a distinction between being under the influence and being impaired, that is splitting a pretty fine hair. In fact, this Court has used the term *impaired* to describe being under the influence of intoxicating liquor. *E.g.*, *Gilpatrick v. State*, 991 So. 2d 130, 133 (Miss. 2008) (citing *Leuer*, 744 So. 2d at 268).

¶42. I suggest the clearer course—to reduce confusion and unforced errors when instructing juries in Section (1)(a) common law DUI cases—is to simply drop the surplusage complained of here and stick to the elements in Section (1)(a). That section makes clear that the State must prove the defendant (1) operated a motor vehicle, and (2) was under the influence of intoxicating liquor. Miss. Code Ann. § 63-11-30(1)(a). *See Leuer*, 744 So. 2d at 269 (holding that Section 63-11-30(1)(a) "is not void for vagueness and does sufficiently provide fair notice of the proscribed conduct"). Courts are certainly free to also use the court-approved and commonly understood definition of driving "under the influence"—i.e., "driving in a state of intoxication that lessens a person's normal ability for clarity and

14

control." ***Valentine v. State***, 322 So. 3d 417, 425 (Miss. 2021).[3] But an instruction like S-8's potential to confuse weighs very heavily against giving it in Section (1)(a) common law DUI cases.

**COLEMAN, BEAM, CHAMBERLIN AND GRIFFIS, JJ., JOIN THIS OPINION.**

**KITCHENS, PRESIDING JUSTICE, DISSENTING:**

¶43. Rita Ann Jenkins was indicted by a grand jury for "DUI 3rd OFFENSE[.]" On the next line of the indictment appears the following statutory citation: "Section 63-11-30(1)(a) & (2)(c), Miss. Code of 1972, as amended[.]" The accusing language of the indictment tracks the statutory verbiage of Section 63-11-30(1)(a), alleging that Jenkins "did . . . drive or operate a motor vehicle while under the influence of intoxicating liquor . . . ." (Emphasis added.)[4]

¶44. With respect to Jenkins's conduct at the time of the alleged offense, the State was obliged to prove, beyond a reasonable doubt, that she had driven or operated a motor vehicle while under the influence of intoxicating liquor. In that regard, the jury was grossly misinformed by Jury Instruction S-8, requested by the State, objected to by the defense, and granted by the court. Instruction S-8 misleadingly told the jurors:

> The Court instructs the Jury that the State is not required to prove that

---

[3] In ***Valentine***, we held that defining "under the influence" coupled with an instruction providing the statutory elements of DUI "fairly and accurately informed the jury of the law." ***Id.***

[4] The remainder of the charge addresses Jenkins's alleged status at the time, saying that Jenkins "previously had been twice convicted and sentenced of prior Implied Consent Law offenses . . . ."

alcohol impaired a defendant's ability to drive, or the level of impairment, only that the Defendant was driving a motor vehicle while she was under the influence of intoxicating liquor.

¶45. Section 63-11-30(1)(a)'s proscription on driving "under the influence" entails a more subjective analysis than the neighboring provisions proscribing objective *per se* measurements of amounts of alcohol in the blood, urine, or breath of the defendant. *See* Miss. Code Ann. § 63-11-30(1)(d) (Rev. 2022). Section 63-11-30(1)(a) "comes into play primarily in those instances where there were no accurate test result, where an individual tested below the .10% level . . . or where a DUI test has been refused." **Leuer v. City of Flowood**, 744 So. 2d 266, 268 (Miss. 1999).

¶46. Discussing this concern in **Leuer**, this Court noted that the general understanding of "under the influence" is that it "is commonly understood to mean driving in a state of intoxication that lessens a person's normal ability for clarity and control." **Id.** at 269-70 (internal quotation marks omitted) (citing **Gov't of V.I. v. Steven**, 134 F.3d 526, 528 (3d Cir. 1998)). In other words, the State is required to prove more than a defendant's consumption of some amount of alcohol. This additional context of the common understanding of "under the influence" was integral to this Court's holding that the statute was not void for vagueness. **Id.** at 269 (internal quotation marks omitted). Indeed, this definition of "under the influence" should be viewed as essential to avoid misleading the jury into convicting a defendant when the evidence does not support more than alcohol consumption alone.

¶47. Here, Instruction S-8 told the jury that "the State is not required to prove that alcohol impaired a defendant's ability to drive, or the level of impairment . . . ." This language is

16

profoundly confusing and misleading, creating the impression for the jury that the State does not have to prove more than that the defendant ingested some alcohol, no matter how little. It is "error to grant an instruction which is likely to mislead or confuse the jury as to the principles of law applicable to the facts in evidence." ***Denham v. Holmes ex rel. Holmes***, 60 So. 3d 773, 780 (Miss. 2011) (internal quotation mark omitted) (quoting ***Bickham v. Grant***, 861 So. 2d 299, 301 (Miss. 2003). The potential harm of this error is compounded by the absence of a clarity and control instruction and the absence of a mere consumption instruction.

¶48.    In ***Valentine v. State***, this Court referenced with approval that the defendant had been granted an instruction defining "under the influence" as "driving in a state of intoxication that lessens a person's normal ability for clarity and control." ***Valentine v. State***, 322 So. 3d 417, 423-24 (Miss. 2021) (internal quotation marks omitted) (quoting ***Leuer***, 744 So. 2d at 269). The Court noted that this instruction, along with an instruction on the elements of the crime, were sufficient to inform the jury of the law. ***Id.*** at 424. The ***Valentine*** majority found no error in the trial court's refusal of Valentine's additional proposed mere consumption instruction, which would have provided:

> The Court instructs the jury that mere consumption is insufficient to prove that a criminal defendant was driving "under the influence" of an intoxicant. To prove driving under the influence, the State must prove the drug inhibited the person's capacity to operate his vehicle with clarity and control.

***Id.*** at 423. I dissented, taking the position that because "Valentine's proposed [mere consumption] jury instruction was an accurate statement of the law and was not covered elsewhere in the jury instructions, Valentine was 'entitled to have [the] jury instruction[]

17

given which present[ed] his theory of the case[.]'" *Id.* at 439 (Kitchens, P.J., dissenting) (third, fourth, and fifth alterations in original) (quoting *Victory v. State*, 83 So. 3d 370, 373 (Miss. 2012)).

¶49. Unlike the defendant in *Valentine*, who did at least receive a clarity and control instruction, Jenkins was not granted an instruction defining "under the influence" as "a state of intoxication that lessens a person's normal ability for clarity and control or an instruction that the State is required to prove more than mere consumption of alcohol. *Valentine*, 322 So. 3d at 423 (internal quotation marks omitted) (quoting *Leuer*, 744 So. 2d at 269). In light of the confusion inherent to Instruction S-8, such an instruction was especially necessary. Our Court of Appeals has affirmed the grant of a mere consumption instruction when there is an evidentiary basis for the instruction such as that the defense strategy is to acknowledge that the defendant did consume alcohol but was not under the influence. *Moore v. State*, 806 So. 2d 308, 313 (Miss. Ct. App. 2001).[5]

---

[5] The granted mere consumption instruction in *Moore* provided:

D-5: You the jury are instructed that in the State of Mississippi it is not illegal to drive after having consumed a quantity of alcohol. It is, therefore, not unlawful to drink alcoholic beverages and then drive or operate a motor vehicle in this State. The prohibition is against driving under the influence of alcohol, which impairs a person's ability to operate said motor vehicle. But not every person who has consumed an alcoholic beverage and operates a motor vehicle is in violation of the law. The person who is not under the influence of alcohol is the one who consumes an alcoholic beverage and is not thereby impaired in the operation of a motor vehicle.

The mere fact that the Defendant may have consumed a quantity of an alcoholic substance and drove or operated a motor vehicle is not in and of itself unlawful, an unless the Defendant's ability to operate a motor vehicle was impaired by reason of having consumed an alcoholic substance which

18

¶50. Jenkins's defense strategy at trial was to acknowledge the fact that she had been drinking at an earlier time but to contend that she was not impaired at the time she was pulled over. Given this defense strategy and in conjunction with Instruction S-8, additional instruction was essential for the jury not to be confused or misled.

¶51. Additionally, Instruction S-8 is abstract. "[T]he use of an abstract instruction without application of the specific facts of the case under consideration invites reversible error." *McCarty v. Kellum*, 667 So. 2d 1277, 1288 (Miss. 1995) (citing *Harkins v. Paschall*, 348 So. 2d 1019, 1023 (Miss. 1977)). "[T]he granting of an abstract jury instruction will be considered reversible error only if the instruction tends to confuse and mislead the jury." *Young v. Guild*, 7 So. 3d 251, 260 (Miss. 2009) (citing *Freeze v. Taylor*, 257 So. 2d 509, 511 (Miss. 1972)).

> "The test to determine whether or not an instruction is abstract is to determine whether or not the instruction relates to facts shown by the evidence on the issues involved in the case. If an instruction merely relates a principle of law without relating it to an issue in the case, it is an abstract instruction and should not be given by the Court."

*Id.* (quoting *Fred's Stores, Inc. v. M & H Drugs, Inc.*, 725 So. 2d 902, 918 (Miss. 1998)). Jury instructions are to be read together as a whole. *Denham*, 60 So. 3d at 780.

¶52. Instruction S-8 abstractly focuses on what the State is *not* required to prove: "the State is not required to prove that alcohol impaired a defendant's ability to drive, or the level of impairment . . . ." With "under the influence" not defined for the jury, the jury clearly could

---

was the cause of the impairment, then you should find the Defendant not guilty.

*Moore*, 806 So. 2d at 313.

19

be confused into lowering the burden of proof the State carries for establishing guilt. Reading the instructions as a whole, no clarity and control or mere consumption instructions were given that would operate to cure any confusion created by Instruction S-8.

¶53. Jenkins argues that her lawyer was ineffective for failing to secure a mere consumption instruction and stipulates that the record on direct appeal is adequate for review of ineffective assistance of counsel. Our Court of Appeals has "upheld claims for ineffective assistance of counsel in the face of inadequate jury instructions." *McTiller v. State*, 113 So. 3d 1284, 1291 (Miss. Ct. App. 2013); *see also* *Blunt v. State*, 55 So. 3d 207, 210-12 (Miss. Ct. App. 2011). Despite making an *ore tenus* motion asking for an instruction that would encompass Jenkins's defense strategy, her lawyer ultimately failed to present to the court an appropriate instruction for consideration. While a decision on whether to request certain jury instructions is typically presumed to be a trial strategy, this presumption can be rebutted. *See* *Strickland v. Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). A particular choice will not be trial strategy if "counsel's tactics are shown to be 'so ill chosen that it permeates the entire trial with obvious unfairness.'" *Rogers v. State*, 85 So. 3d 293, 297 (Miss. 2012) (internal quotation mark omitted) (quoting *McGilberry v. State*, 843 So. 2d 21, 31 (Miss. 2003)).

¶54. A defendant is entitled to jury instructions that present her theory of the case. *Newell v. State*, 49 So. 3d 66, 74 (Miss. 2010). Here, Jenkins's trial counsel articulated to the court Jenkins's intended defense strategy but then failed to present and secure an appropriate instruction. This is blatant ineffective assistance, not a reasonable trial tactic.

20

¶55. For all of the above reasons, I dissent.

**KING, P.J., AND ISHEE, J., JOIN THIS OPINION.**